Luis TORRES, Petitioner,

v.

Frank IRVIN, Superintendent; Wende Correctional Facility; and The Attorney General of New York State, Respondents.

No. 97 Civ. 5078(DLC).

United States District Court,
S.D. New York.

Nov. 23, 1998.

Order Denying Reconsideration
Dec. 11, 1998.

Deneen Hawkins, New York City, plaintiff pro se.

Mirna E. Martinez, Asst. Attorney General, Division of State Counsel, Litigation Bureau, New York City, for defendant.

Luis Torres, Alden, NY, petitioner pro se.

Dennis Vacco, Attorney General for the State of New York, Andrew C. Tsunis, Assistant Attorney General, New York City, for respondents.

*OPINION and ORDER*

COTE, District Judge.

On June 9, 1997, this Court's Pro Se Office received a writ of habeas corpus from Luis Torres ("Torres") challenging his convictions for possession of a controlled substance and conspiracy, which were entered following a trial held in New York State court in 1990. For the reasons discussed below the petition is denied.

**Background**

Torres was arrested on June 1, 1989. A search of his apartment conducted pursuant to a warrant uncovered heroin, cocaine, drug

paraphernalia, and almost $75,000 in cash. The affidavit supporting the warrant application included information from a confidential informant. Torres and others were indicted by a grand jury on May 17, 1990.

Torres moved to suppress the evidence uncovered in the search of his apartment. The trial court held a hearing pursuant to *People v. Seychel,* 136 Misc.2d 310, 518 N.Y.S.2d 754 (Sup.Ct.1987), to determine whether there was probable cause to issue the search warrant and whether the defendants were entitled to the affidavit without redaction of information that would reveal the identity of the confidential informant. Torres's counsel, Robert Dunn ("Dunn"), failed to appear at the *Seychel* hearing, despite being notified by the court and the prosecutor of the hearing date. Counsel for one of the co-defendants participated in the hearing by submitting questions that were placed by the prosecutor or the court to the informant. After concluding that there was a risk to the informant's safety, the court directed the prosecutor to redact from the search warrant only so much information as was necessary to protect the informant's identity.

Torres alleges that the trial judge and Dunn maintained an antagonistic relationship throughout the trial that prejudiced the jury and consequently deprived Torres of his constitutional right to a fair trial. Torres provides several examples in his petition: the court interrupted Dunn during his opening argument and warned him not to instruct the jury on legal principles; cut off cross examination, stating that "it's been asked six times;" and threatened to impose sanctions on counsel. Out of the jury's presence the court fined counsel $200.00 for tardiness and chastised Dunn for appearing at the restaurant where the jury was taken for dinner.

Before summations, the court discussed the proposed jury charge with counsel for all parties. At the end of the charging conference Dunn asked whether he could appear one hour late the following day, when the jury was to be charged, because he had an appearance in federal court. Dunn asked that co-counsel stand in for him and that the court apologize to the jury on his behalf.

The court obtained Torres's consent and instructed Dunn to arrive as soon as possible.

The following morning the court informed the jury that

Mr. Dunn asked, and his client asked, to excuse him until he can be here in the next half hour or so, because of a problem that came up that he had to attend to. And his co-counsel will stand in for him, listening to the charge, until he's able to arrive. So don't be surprised at his not being here, he will be here as soon as possible and has asked me to proceed, as has his client.

Dunn returned before the court finished charging the jury. No objections were made by any defense counsel while Dunn was absent. After the jury was charged, counsel for a co-defendant objected to two examples in the charge. Dunn joined in those objections.

The jury found Torres guilty on one count of conspiracy and ten counts of possession of a controlled substance. On December 13, 1990, the court sentenced Torres to concurrent and consecutive sentences resulting in a total sentence of fifty years to life, and imposed a $1 million fine. An appeal filed by Torres, represented by new counsel, was denied by the First Department on February 13, 1996. Torres was denied leave to appeal by the Court of Appeals on June 4, 1996. Torres did not seek a writ of certiorari in the United States Supreme Court. On December 26, 1996, Torres filed a motion for a Writ of Error Coram Nobis *pro se* claiming ineffective assistance of appellate counsel. The First Department denied the writ on September 23, 1997.

Torres signed his federal habeas corpus petition on June 2, 1997, and it was received by the Court's Pro Se Office on June 9, 1997. Torres raises four issues in his petition: (1) he was denied effective assistance of counsel when his attorney was absent during the jury charge; (2) he was denied effective assistance of counsel when he was represented during the jury charge by counsel for a co-defendant who had a conflict of interest; (3) the conduct of the trial judge deprived Torres of a fair trial; and (4) the prosecutor's failure to provide Torres with an unredacted

search warrant affidavit violated his Fourth Amendment rights and his rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

On October 8, 1997, Torres's petition was referred to Magistrate Judge Andrew Peck for a Report and Recommendation. On October 21, 1997, Magistrate Judge Peck granted Torres permission to file an amended petition. The amended petition added claims of ineffective assistance of appellate counsel for failure to argue that (1) the prosecutor's refusal to turn over the complete search warrant affidavit violated *Brady,* and (2) that the trial court should have granted Torres's severance motion. On July 23, 1998, Magistrate Judge Peck issued his Report recommending that the petition and amended petition (collectively "the petition") be denied. The parties had ten days in which to object to the Report, and on August 3, 1998, the petitioner requested an extension of time to file objections. The Court extended Torres's time to object to September 21, 1998. Torres timely filed objections to the Report on September 15, 1998.

**Discussion**

■ Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide the standard for district court review of a federal Magistrate Judge's order. For dispositive matters, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). The Court shall make a *de novo* determination of those portions of the report to which objections are made. *Id.; United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). Where there is no timely objection, "a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous").

### 1. Timeliness

Judge Peck rejected the respondents' assertion that Torres did not timely file his petition under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d). The respondents have not objected to Magistrate Judge Peck's finding that the petition was timely and the Court finds that there is no clear error apparent in Judge Peck's analysis.

### 2. Ineffective assistance of trial counsel

Torres claims that he was denied effective assistance of trial counsel when his counsel, Dunn, was absent during a portion of the charge to the jury. Torres asserts that the counsel for a co-defendant who represented him in his own attorney's absence had a conflict of interest. Torres further asserts that he was "hesitant" to give consent to Dunn's absence, that none of the co-defendants' counsel agreed on the record to represent Torres, and that he did not know to which attorney he could turn for advice in Dunn's absence.

■ Before a criminal defendant may proceed without counsel the court must be sure that the defendant has "knowingly and intelligently" waived his constitutional right to counsel. *United States v. Schmidt,* 105 F.3d 82, 88 (2d Cir.1997). In this case, however, Torres was not without counsel; he was represented by counsel for a co-defendant. The court asked Torres whether he consented to representation by co-defendant's counsel, and Torres gave his consent on the record.

■ Torres contends that the representation by a co-defendant's counsel was unconstitutional because the court failed to conduct a searching inquiry of the risks inherent in joint representation before accepting Torres's consent to this representation. Even applying the law which governs joint representation for purposes of an entire trial, Torres's claim must fail. Where a trial court "knows or reasonably should know that a particular conflict exists," it must inquire into the conflict before allowing joint representation. *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See also United States v. Stantini,* 85 F.3d 9, 13

(2d Cir.1996). When an inquiry is required, a petition for a writ of habeas corpus must be granted where the trial court has failed to make such an inquiry. *See Wood v. Georgia*, 450 U.S. 261, 272 n. 18, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Stantini*, 85 F.3d at 13. Where the court does not or should not know about a conflict, however, no inquiry is required. *Cuyler*, 446 U.S. at 346–47, 100 S.Ct. 1708. Instead, the court may rely on "the good faith and good judgment of defense counsel." *Id.*

In this case, the trial court did not know, nor should it have known, that there was a conflict of interest between Torres and any co-defendant's counsel that would affect Torres during Dunn's brief absence. Dunn stated that counsel for a co-defendant would represent Torres during his absence. There was no reason for the court to inquire about a conflict of interest given Dunn's implicit representation that no conflict existed. An assessment that there was no apparent conflict was particularly reasonable since the joint representation was to be brief and Dunn had already participated in the charging conference.

■ Torres has also been unable to show that a conflict of interest actually existed. A conflict of interest will deny a defendant the right to counsel guaranteed by the Sixth Amendment to the United States Constitution when there is a " 'potential conflict of interest that resulted in prejudice to the defendant,' " or an " 'actual conflict of interest that adversely affected [his] attorney's performance.' " *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir.1995) (quoting *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994)).

■ An actual conflict of interest occurs when the interests of the attorney and defendant " 'diverge with respect to a material factual or legal issue or to a course of action.' " *Lopez*, 58 F.3d at 41 (quoting *Winkler*, 7 F.3d at 307). To show that an actual conflict of interest adversely affected the lawyer's performance, a defendant must

> demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or

not undertaken due to the attorney's other loyalties or interests.'

*Id.* (quoting *Levy*, 25 F.3d at 157). Torres has made no showing to support a finding that an actual conflict of interest existed.

■ Torres has also failed to demonstrate that during the period when Dunn was absent, counsel for his co-defendant had a potential conflict of interest that prejudiced him. Torres states that counsel for his co-defendants had a potential conflict of interest because Dunn and the other counsel differed in their assessment of a key prosecution witness. Even assuming such a disagreement, Torres has not identified any prejudice that he suffered. He states in his petition that,

> [a]lthough *it cannot be stated that this conflict directly and in a focused way prejudiced the petitioner* during the charge, there was clearly a significant potential for prejudice which was subtle but very real. Neither counsel [for co-defendants] made any objections or requests to charge which directly bore upon defendant Torres [sic] interests. Both counsel made objections, however, which would have directly affected their clients' interests had those objections been granted.... *It is difficult to say what specific requests to charge*, modifications to charge, or reemphasis, *Mr. Dunn might have been made had he been present during the charge.*

(Emphasis supplied.) This conjecture is insufficient to establish prejudice. Dunn was present for the charging conference, and Torres has not pointed to any passage in the charge as given to the jury to which further objection was required. In sum, Torres has not shown either that he was prejudiced by Dunn's absence or that he was denied the right to counsel.

### 3. *Conduct of the trial judge*

■ Torres asserts that he was denied a fair trial due to the antagonistic relationship between the trial judge and Dunn. This claim is unreviewable here, however, because the appellate court found that Torres failed to preserve this issue for appeal by making "appropriate objections or a motion for a

mistrial." *Torres,* 637 N.Y.S.2d at 725.[1] This ruling is an independent and adequate state ground for dismissal. The appellate court also added that the claim "in any event is without merit," as the trial judge's comments were necessitated by Dunn's conduct. *Id.*

 When a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). *See also Jones v. Vacco,* 126 F.3d 408, 414 (2d Cir. 1997). Torres does not allege cause for the procedural default nor prejudice, or that failure to consider the claim will result in a miscarriage of justice.

 Federal habeas review is barred even when the state court rules in the alternative on the merits of the claim under federal law, if the court has also expressly ruled on an independent and adequate state ground. *Glenn,* 98 F.3d at 724. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("state court need not fear reaching the merits of a federal claim in an *alternative* holding" (emphasis in original)). Here, the state appellate court expressly relied on the procedural default to deny Torres's claim.

 The fact that Torres was denied leave to appeal the First Department's ruling without a written opinion by the Court of Appeals does not change this analysis. When an order is unexplained and there has been "one reasoned state judgment rejecting a federal claim," the federal habeas court presumes that the "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). *See also Hayes v. Coombe,* 142 F.3d 517, 519 (2d Cir.1998). In sum, the appellate court's ruling that Torres's claim was procedurally barred prevents review here.

### 4. Search warrant affidavit

 Torres claims that the failure of the prosecutor to provide him with the search warrant affidavit violated the Fourth Amendment and *Brady v. Maryland.* A petition for a writ of habeas corpus must be dismissed where it seeks simply to relitigate a Fourth Amendment claim. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991). The court on habeas review may only consider a Fourth Amendment claim where the petitioner was denied a full and fair opportunity to litigate the Fourth Amendment claim in the state courts.

 Even if the Court construes Torres's petition as an assertion that he did not have a full and fair opportunity to litigate his Fourth Amendment claim, Torres's petition must be dismissed. A petitioner will be deemed not to have received a full and fair opportunity to litigate a Fourth Amendment claim where (1) the state provides "no corrective procedures at all to redress Fourth Amendment violations," or (2) where the defendant is unable to use the procedures provided by the state because of "an unconscionable breakdown in that process." *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977). *See Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992). An unconscionable breakdown occurs when there is a " 'disruption or obstruction of a state proceeding' " such that the opportunity to litigate the Fourth Amendment claim is denied. *Id.*

It is clear that Torres received a full and fair opportunity to litigate his Fourth

---

**1.** Under New York law, this procedural error bars an appeal unless the appellate division, as a matter of discretion, chooses to rule on the claim "in the interest of justice." *Glenn,* 98 F.3d at 724 n. 2 (citing *People v. Cona,* 49 N.Y.2d 26, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979)); N.Y.Crim.Proc.Law §§ 470.05(2), 470.15(6).

Amendment claim in state court. As described above, the trial court held a *Seychel* hearing to determine whether there was probable cause to issue a search warrant.

 Torres next claims that the failure of the prosecution to turn over the search warrant affidavit violated the rule established by *Brady v. Maryland.* Torres did not raise this claim on direct appeal and has thus failed to exhaust his state remedies.[2] All state remedies must be exhausted before a federal court may grant a petition by a state prisoner for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A). *See also Jones,* 126 F.3d at 413. A court may deny a petition, however, that contains an unexhausted claim. 28 U.S.C. § 2254(b)(2). An "exhausted" claim is one that has been fairly presented in the state courts, which occurs when those courts are apprised of both the factual and legal bases for the claim and have enough information to alert them to the claim's federal nature. *Jones,* 126 F.3d at 413.

While Torres did not present his *Brady* claim to the state court, this Court concludes that the petition should not be dismissed for failure to exhaust. The *Brady* claim is an issue of law that does not require factual analysis. Moreover, as discussed below, the claim is without merit. A dismissal would simply return the case to the state court and again to this Court on a renewed writ of habeas corpus. The outcome of the petition would be the same. The Court will, therefore, reach the merits of Torres's *Brady* claim.

 Torres argues that without the complete search warrant affidavit he was "powerless to evaluate the validity of the search warrant." Without the evidence seized in the search, Torres contends that the charges against him would have been dismissed.

 A challenge to an affidavit that provides probable cause to issue a search warrant is governed by *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which is rooted in the concept that evidence seized through police misconduct should be suppressed. While the *Franks*

rule does not speak to guilt or innocence, the rule established by the Supreme Court in *Brady v. Maryland* is aimed at just that. *Brady* established that the Due Process Clause forbids the prosecution from suppressing "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment. . . ." 373 U.S at 87, 83 S.Ct. 1194. The rule in *Brady* avoids an "unfair trial of the accused." *Id.* Torres's claim is one properly brought under *Franks,* which addresses the validity of a search warrant affidavit, and not *Brady. See Mays v. City of Dayton,* 134 F.3d 809, 815 (6th Cir. 1998) (explaining why the rule in *Brady* should not be confused with the requirements under *Franks* ); *United States v. Colkley,* 899 F.2d 297, 302–303 (4th Cir.1990) (same); *O'Quinn v. Estelle,* 574 F.2d 1208, 1209 (5th Cir.1978) (dismissing a petition for a writ of habeas corpus seeking, under the rule of *Brady,* to learn the identity of informants relied upon in a search warrant affidavit); *United States v. Shields,* 783 F.Supp. 1058, 1075 (N.D.Ill.1991) (citing *Colkley* ). Torres may not avoid the rule set forth in *Stone* by characterizing his attack on the search warrant as one based on *Brady.*

### 5. *Ineffective assistance of appellate counsel*

Torres claims that his appellate counsel was ineffective because he failed to argue that (a) the prosecutor's refusal to turn over the search warrant affidavit violated *Brady v. Maryland,* and (b) the trial court should have granted Torres's severance motion.

 To establish a claim for ineffective assistance of appellate counsel, Torres must show that (1) his attorney's performance " 'fell below an objective standard of reasonableness' " and (2) " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Bethea v. Artuz,* 126 F.3d 124, 126 (2d Cir.1997) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Appellate counsel's performance will not be

---

**2.** In his motion for a Writ of Error Coram Nobis, claiming ineffective assistance of appellate coun-

sel, Torres asserted that that counsel was ineffective for failing to raise this *Brady* claim.

deemed unreasonable merely because she failed to "advance every nonfrivolous argument. . . ." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Rather, counsel may focus on key issues and "winnow[ ] out weaker arguments." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The petitioner will establish constitutionally inadequate performance when he shows that appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at 533. The omission of a meritless claim may not be excused "simply because an intermediate appellate court would have rejected it." *Id.* at 533–34. To evaluate the prejudice component of the ineffective assistance test, the court must determine whether, "absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different," specifically, that there was a "reasonable probability that the claim would have succeeded at the state's highest court." *Id.* at 534 (citing *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992)).

Torres has failed to demonstrate that his appellate counsel's performance was unreasonable or that he was prejudiced by counsel's errors. Torres's appellate counsel, Leonard Levenson, presented five arguments on appeal: (1) it was reversible error to allow Torres to stand unrepresented at the jury charge; (2) it was reversible error to fail to advise Torres of the potential conflict of interest of counsel for a co-defendant who represented Torres during the jury charge; (3) the conduct of the trial judge prejudiced the jury; (4) the sentence was excessive; and (5) the prosecutor's failure to provide Torres with the search warrant affidavit violated Torres's Fourth Amendment rights.

The decision by appellate counsel to omit the argument that Torres was entitled by *Brady* to the search warrant affidavit was not unreasonable. As discussed above, *Brady* does not require the prosecutor to turn over a search warrant affidavit, and Levenson's decision not to include this argument on appeal was more than reasonable. Further, Levenson properly advanced the argument that Torres was entitled to the affidavit as a claim under the Fourth Amendment.

Similarly, Levenson was reasonable in deciding not to appeal the denial of Torres's severance motion. New York permits joinder where "all the offenses charged are based on a common scheme or plan." New York Crim.Proc.Law § 200.40(1)(b). The decision to deny a severance motion rests in the sound discretion of the trial judge. *People v. Jackson,* 671 N.Y.S.2d 329 (2d Dep't 1998); *People v. Mahboubian,* 74 N.Y.2d 174, 544 N.Y.S.2d 769, 773, 543 N.E.2d 34 (N.Y.1989). Severance is compelled only where

> the core of each defense is in irreconcilable conflict with the other and where there is a significant danger . . . that the conflict alone would lead the jury to infer defendant's guilt.

*Id.* at 774. The defendant's burden to show that the trial court abused its discretion by failing to sever the trial is "substantial." *Mahboubian,* 544 N.Y.S.2d at 773, 543 N.E.2d 34.

Torres was charged along with eleven others[3] in a fifty-four count indictment to conspire to distribute cocaine and heroin. After nine of the defendants pled guilty, Torres was tried with two co-defendants. Torres argues in his petition for habeas relief that the trial court's denial of the severance motion was improper because the co-defendants had "conflicting stories" and different "versions of the crime and participation of all defendants." In his motion for a Writ of Error Coram Nobis—which asserted ineffective assistance of appellate counsel—Torres argued that because the co-defendants were charged with sale of a controlled substance but he was charged only with possession, there was an irreconcilable conflict between the co-defendants that required severance.

Torres has not shown that the trial judge had reason to conclude that the core of his defense was irreconcilable with those of the

---

3. The record shows both that there were initially ten and eleven co-defendants. The Court has

used the numbers provided by Torres.

co-defendants such that there was a significant danger that the conflicting defenses alone would lead the jury to infer his guilt. *See id.* at 774. The charges against Torres and his co-defendants were based on a "common scheme or plan" and under New York Criminal Procedure Law joinder of the defendants was proper. It was, therefore, entirely reasonable for Torres's appellate counsel to omit the severance argument from the appeal.

Even if Torres could establish that Levenson's lawyering was deficient, Torres has not demonstrated that he was prejudiced by the deficiency. There was no " 'reasonable probability' " that the claims omitted on appeal would have succeeded if they had been argued. *See Mayo,* 13 F.3d at 534.

**Conclusion**

The Report and Recommendation of July 23, 1998 is adopted. The petition is dismissed. The Clerk of Court shall close the case. I further find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

*REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Petitioner Luis Torres seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 from his conviction for selling and conspiring to sell heroin. Torres contends that: (1) his attorney's absence during the jury charge constituted a deprivation of counsel (Petition, dated 6/2/97, at pp. 11-15); (2) his temporary counsel during the jury charge, i.e., counsel for a co-defendant, had a conflict of interest (Petition at 16-19); (3) the trial judge's conduct prejudiced the jury (Petition at 19-21); (4) the prosecution improperly withheld a search warrant affidavit in violation of Torres' Fourth Amendment rights (Petition at 22-23); and (5) Torres received ineffective assistance of appellate counsel because of his counsel's failure to challenge Torres' conviction on the grounds that (a) the prosecution improperly withheld a search warrant affidavit and (b) the trial court erred in denying

Torres' motion for a severance (Amended Petition, dated 10/14/97, at pp. 25-27).

For the reasons set forth below, I recommend that Torres' habeas petition be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

*Arrest and Search*

On June 1, 1989, police arrested Torres, and executed a search warrant of his apartment. (Tr. 2482–86.) The warrant application was supported by an affidavit that included information provided by a confidential informant. (*Seychel* Hr'g Tr. 310–18.) Police recovered large amounts of heroin, cocaine, drug paraphernalia, and pre-stamped glassine envelopes used for packaging heroin, and almost $75,000 in cash. (Tr. 2483–89.) Torres and others were charged by a grand jury on May 17, 1990 in a 54–count indictment for conspiracy and drug possession. (Affidavit of A.D.A. Andrew C. Tsunis ¶ 3 & Ex. A: Indictment No. 5753/90.)

*Torres' Seychell Hearing*

Torres moved to suppress the physical evidence recovered from the search of his apartment, and on August 2, 1990, the trial court (Justice Leslie Crocker Snyder) held a hearing pursuant to *People v. Seychel,* 136 Misc.2d 310, 518 N.Y.S.2d 754 (Sup.Ct. N.Y.Co.1987), in order to determine whether probable cause existed for issuing the search warrant. (*Seychel* Hr'g Tr. 310–18.) The court made a point of noting for the record that Torres' defense counsel "was notified to be here as to Luis Torres on the *Seychel* issue. We left numerous messages. I've directed [ADA] Herschmann to and the court did. I have not heard from him. I don't know where he is." (*Seychel* Hr'g Tr. 312.) Counsel for one of Torres' co-defendants participated in the hearing by submitting questions to test the confidential informant's credibility. (*Seychel* Hr'g Tr. 310–12.) Justice Snyder provided the following explanation of the procedures she followed to determine that probable cause existed to search Torres' apartment:

I reviewed the search warrant. It did appear that it contained probable cause on

its face. There was no reason on the face of things to believe that the warrant was facially perjurious.

The warrant further appears to satisfy the two prong *Aguillar/Spinelli* test on its face. By the time I finished conducting my *Seychel* inquiry of the informant and the detective, I.was satisfied that, in fact, *Aguillar/Spinelli* was satisfied and that probable cause existed for the issuance of the search warrant.

I then proceeded to conduct an ex-parte inquiry of the informant during which time I allowed [ADA] Herschmann to ask questions and I asked questions, making certain that all of your questions, Mr. Thomas [co-defendant's counsel] were, asked either there or that they would be answered for you in open court.

I should indicate, of course, that I was fully satisfied as a predicate to this procedure there would be a substantial risk of the informant being killed or hurt if his or her identity were revealed and that was why he engaged in this procedure, but I first engaged in an inquiry to make certain that that, in fact, was true so that there was a need for this kind of a hearing.

I directed Mr. Herschmann to redact the search warrant, redacting as little as possible consistent with not endangering his informant.

He indicated that he felt he could do so and that a good deal of the search warrant would remain, something that I have not found to be true in every comparable inquiry.

In fact he questioned me and I—Well, I should not state what he presented me with simultaneously with a copy of the unredacted search warrant which, of course, is in the files, my files already and a copy of his redaction and you have the redacted copy.

. . .

Mr. Thomas, I think that I've summarized for you everything that I've been able to summarize without disclosing the information which was the purpose of holding a *Seychel* to begin with.

All of your questions were asked either on the sealed Seychel record or I directed Mr. Herschmann to answer them this morning and he did so on the record.

(*Seychel* Hr'g Tr. 313–15.) The court ordered a transcript of the hearing to be delivered to Torres' counsel, Mr. Dunn, and permitted him to pose any further questions to the prosecutor so long as the answers would not endanger the informant. (*Seychel* Hr'g Tr. 312–13, 317–18.)

### Trial Judge's Conduct

Torres contends that the antagonistic relationship between the trial judge and his counsel so prejudiced the jury as to deprive him of his constitutional right to a fair trial. (Petition at 19–21.) While Torres alleges that his counsel, Mr. Dunn, and the trial judge sparred verbally throughout the trial, Torres only gives two specific examples. First, during Mr. Dunn's opening statement, the judge interrupted him, admonishing him to refrain from instructing the jury on legal principles. (Tr. 86.) By the end of the trial, outside of the jury's presence, the court imposed a $200 fine upon Mr. Dunn for his repeated tardiness. (Tr. 3349.)

### Torres' Counsel's Absence During the Jury Charge

Justice Snyder discussed the proposed jury charge with counsel before summations. (Tr. 2801–02, 2815–46, 2850–51, 2953–54, 2961.)

After summations had ended, Torres' counsel Mr. Dunn requested to be excused from the jury charge the next morning for an hour because he had to be in federal court, and asked that co-defendant's counsel stand in for him. (Tr. 3168–69.) The following exchange occurred outside the presence of the jury:

THE COURT: Mr. Dunn, you're requesting—just leave Mr. Torres here a second. You're requesting that Mr. Torres excuse you and that I excuse you until you're able to arrive here from Federal Court on a 21–defendant case in which you must appear at 10:00 a.m.?

MR. DUNN: Yes. I should be here at 11:00.

THE COURT: Counsel have agreed to stand in for your interests at the charge which I feel will begin about 10:00?

MR. DUNN: If your Honor could apologize to the jury for me.

THE COURT: I'll be glad to do that. *Do you consent to that Mr. Torres?* You have to answer.

DEFENDANT TORRES: *Yes.*

THE COURT: Thank you. I will excuse you. Get here as soon as you can, Mr. Dunn.

(Tr. 3168–69, emphasis added.)

The trial court began the charge the next morning by advising the jury:

> Mr. Dunn asked, and his client asked, to excuse him until he can be here in the next half hour or so, because of a problem that came up that he had to attend to. And his co-counsel will stand in for him, listening to the charge, until he's able to arrive. So don't be surprised at his not being here, he will be here as soon as possible and has asked me to proceed, as has his client.

(Tr. 3173.) Mr. Dunn returned before the jury charge was complete. (Tr. 3258.) No objections were made by any defense counsel during the part of the charge from which Torres' counsel was absent. (Tr. 3173–258.) After the conclusion of the charge, a co-defendant's counsel objected to two examples the judge had used in the charge, and Torres' counsel joined in those objections. (Tr. 3295–300.)

Torres' habeas petition claims that "there was at least a substantial potential for conflict between counsel for defendant [Torres] and co-counsel" (Petition at 18), since Mr. Dunn's approach and that of his co-counsel differed with respect to a "key witness at the trial," a detective who investigated Torres and his co-conspirators. (Petition at 17–18.) During closing arguments, co-defendant's counsel attempted to discount the testimony of the officer (Tr. 3067), while Torres' counsel described the officer as "[o]ne of the best witnesses in terms of demeanor." (Tr. 3006.) This discrepancy was noted by the prosecution during its closing argument. (Tr. 3076.)

### Verdict and Sentence

On October 31, 1990, Torres was found guilty by the jury of one count of conspiracy, and ten counts of possession of a controlled substance. (Tr. 3345, 3380–83, 3396–403.) On December 13, 1990, Justice Snyder sentenced Torres to concurrent and consecutive sentences resulting in a total sentence of fifty years to life. (Sentencing Tr. 64–65.) The court also imposed a $1 million fine on Torres. (Sentencing Tr. 85.)

### Torres' Direct Appeal

Torres appealed to the First Department, represented by new counsel, Leonard J. Levenson. (Tsunis Aff.Ex. C: Torres 1st Dep't Br.) Torres challenged his conviction on the grounds that (1) he was left unrepresented during the jury charge; (2) the trial court failed to adequately apprise him of the potential conflicts of interest of his stand-in counsel (*i.e.*, co-defendant's counsel) for the jury charge; (3) the trial judge's conduct prejudiced the jury; (4) Torres' sentence was excessive; and (5) the District Attorney's refusal to provide the search warrant affidavit violated Torres' Fourth Amendment rights. (*Id.*)

On February 13, 1996, the First Department affirmed Torres' conviction. *People v. Torres*, 224 A.D.2d 269, 637 N.Y.S.2d 724 (1st Dep't 1996). The First Department held that Torres' claim that he was denied a fair trial due to the trial judge's conduct was "unpreserved for appellate review by appropriate objections or a motion for a mistrial," and that the trial judge's behavior was "necessitated by the conduct of defense counsel." *People v. Torres*, 224 A.D.2d at 269, 637 N.Y.S.2d at 725. As to Torres' claims regarding absence of his counsel and co-defendant's counsel's conflict during the jury charge, the First Department concluded that Torres had "not demonstrated a significant possibility that a conflict of interest existed that operated to his detriment and bore a substantial relation to the conduct of his defense." *Id.* at 270, 637 N.Y.S.2d at 725. Moreover, the First Department noted that Torres' appellate counsel "is unable to point to any portion of the court's charge that his counsel might have challenged had he been present." *Id.* As to the Fourth Amendment

issue, the First Department held that the case should not be remanded for a *Seychel* hearing because "such hearing was in fact held, and the procedure followed was approved" by a prior Court of Appeals decision. Finally, the court "perceive[d] no abuse of discretion in sentencing." *Id.*

The Court of Appeals denied leave to appeal on June 4, 1996. *People v. Torres,* 88 N.Y.2d 943, 647 N.Y.S.2d 177, 670 N.E.2d 461 (1996).

### Torres' Collateral State Attack

On December 26, 1996, Torres filed a motion for a writ of error coram nobis in the First Department, claiming ineffective assistance of appellate counsel. (Tsunis Aff. ¶ 9 & Ex. G.) Torres alleged that appellate counsel was ineffective for failing to argue on appeal that: (1) Justice Snyder should have recused herself because she signed the search warrant for Torres' apartment; (2) the State's failure to provide the affidavit in support of the search warrant violated the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) the trial court erred in not granting Torres' severance motion. (Tsunis Aff.Ex. G.) The First Department denied Torres' ineffective assistance motion on September 23, 1997. (Tsunis Aff. ¶ 13 & Ex. 1.)

### Torres' Federal Habeas Petition

Torres signed his federal habeas corpus petition on June 2, 1997; it was received by the Court's Pro Se Office on June 9, 1997. Torres' habeas petition raised four claims: (1) he was denied the assistance of counsel when his attorney was excused for a portion of the jury charge (Petition at 11–15); (2) his temporary counsel during the jury charge, *i.e.,* counsel for a co-defendant, had a conflict of interest that deprived Torres of effective assistance of counsel (Petition at 16–19); (3) the trial judge's conduct so prejudiced the jury that Torres was denied a fair trial (Petition at 19–21); and (4) the State's failure to provide the search warrant affidavit violated Torres' Fourth Amendment rights (Petition at 22–23). Torres amended his petition on October 14, 1997, to add a claim of ineffective assistance of appellate counsel based on Mr. Levenson's failure to argue the search warrant affidavit and severance issues on appeal.

(Amended Petition at 25–27.) The Court approved the filing of the amended petition by Order dated October 21, 1997.

### ANALYSIS

### I. TORRES' PETITION WAS TIMELY FILED UNDER THE AEDPA

The State alleges that Torres' habeas petition is barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), effective April 24, 1996, which applies a one year statute of limitations to habeas petitions that begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The State alleges that Torres' petition is untimely as it was filed on June 9, 1997, 371 days after the Court of Appeals' June 4, 1996 denial of leave to appeal his conviction. (State Br. at 24–25.) The State's argument fails for three reasons.

First, Torres signed his habeas petition on June 2, 1997. Pro se prisoners' papers are considered filed when they are handed over to prison officials for forwarding to the court. *See, e.g., Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988); *Dory v. Ryan,* 999 F.2d 679, 681–82 (2d Cir.1993); *Concepcion v. Portundo,* 97 Civ. 3183, 1998 WL 42568 at *2 n. 1 (S.D.N.Y. Feb.4, 1998); *Brooks v. Artuz,* 97 Civ. 3300, 1998 WL 42567 at *2 n. 1 (S.D.N.Y. Feb.4, 1998); *Covington v. City of New York,* 916 F.Supp. 282, 286 (S.D.N.Y. 1996) (Scheindlin, D.J. & Peck, M.J.). Absent evidence to the contrary, the Court assumes that Torres gave his petition to prison officials for mailing on the date he signed it, June 2, 1997. *See, e.g., Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441 at *1 n. 2 (S.D.N.Y. April 17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97–2394, 1997 WL 876735 at *1 (E.D.N.Y. Sept.13, 1997). Thus, Torres' habeas petition was filed on June 2, 1997, less than a year after the Court of Appeals denied leave to appeal on June 4, 1996.

■ Second, a judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court. *See, e.g., Cowart v. Goord*, 97 Civ. 3865, 1998 WL 276213 at *2 (S.D.N.Y. May 29, 1998); *Hughes v. Irvin*, 967 F.Supp. at 778; *Jones v. Artuz*, 1997 WL 876735 at *1. The ninety-day period to apply for certiorari after the June 4, 1996 denial of leave to appeal by the New York Court of Appeals expired, and Torres' conviction became final, on September 2, 1996. Torres therefore had until September 1997 to file his habeas petition, and his June 1997 petition therefore was well within the one-year statute of limitations established by the AEDPA.

■ Finally, the AEDPA specifically provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Torres filed his coram nobis motion on December 26, 1996; it was denied by the First Department on September 23, 1997, 271 days later. The time the motion was pending is not counted toward the one-year limitation period. *See e.g., Cromwell v. Keane*, 98 Civ. 0013, slip op. at 6–7 (S.D.N.Y. May 27, 1998) (Peck, M.J.); *Thompson v. Herbert*, No. 97 CV 3645, 1998 WL 199823 at *1–2 (E.D.N.Y. March 16, 1998); *Figueroa v. Kelly*, No. 97 CV 3394, 1997 WL 833448 at *4 (E.D.N.Y. Dec.19, 1997); *Fluellen v. Walker*, 975 F.Supp. 565, 569 (S.D.N.Y.1997) (Peck, M.J.); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997).

Thus, even had Torres not earlier filed his original petition, his October 14, 1997 amended petition was filed within a year when the tolling period of the state collateral attack is considered.

There can be no doubt Torres' habeas petition (and amended petition) is timely under the AEDPA.

## II. *TORRES WAS NOT DEPRIVED OF COUNSEL WHEN, WITH HIS CONSENT, HIS COUNSEL WAS ABSENT FOR PART OF THE COURT'S JURY CHARGE AND TORRES' INTERESTS WERE REPRESENTED BY UNCONFLICTED COUNSEL FOR A CO-DEFENDANT*

Torres' first habeas claim that he was not represented by counsel during the jury charge and his second claim that his co-defendant's counsel had a conflict when "representing" Torres during the jury charge (Petition at 11–19), really are one and the same issue. Torres was not unrepresented at the charge—he was "represented" by co-defendant's counsel. The issue therefore is whether the trial court's inquiry as to possible conflict was sufficient and whether co-defendant's counsel had a conflict when standing in for Torres during the charge.

### A. *The Trial Court's Obligation to Inquire Into Torres' Consent to Joint Representation*

Torres contends that the trial court failed to warn him of the dangers of joint representation and make a searching inquiry into his informed consent to the joint representation. (Petition at 16–19.)

*Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), supplies the standard under which conflict of interest claims should be judged: [1]

> *Holloway [v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ] requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggest that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises

---

1. Because most federal cases addressing the propriety of joint representation have considered the issue when the defendant was represented throughout the trial by the potentially conflicted attorney, it is unclear whether the same strict analysis applies to the more limited circumstances of Torres' case. For purposes of this petition, the Court will assume, without deciding, that the strict *Cuyler* analysis applies.

during the course of a trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the Court noted in *Holloway*, ... trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. "An ' attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'" *Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.*

*Id.* at 346–47, 100 S.Ct. at 1717 (fns. & citations omitted, emphasis added). Reversal on direct appeal or the grant of habeas relief is mandated when the trial court has failed to make such an inquiry when it knows or reasonably should know of he possibility of a conflict of interest. *See, e.g., Wood v. Georgia*, 450 U.S. 261, 272 n. 18, 101 S.Ct. 1097, 1104 n. 18, 67 L.Ed.2d 220 (1981); *Ciak v. United States*, 59 F.3d 296, 302 (2d Cir. 1995); *United States v. Levy*, 25 F.3d 146, 152–54 (2d Cir.1994).

The fact that Torres and his co-defendants were being tried together is not enough by itself to establish that the potential conflict of interest during Torres' counsel's brief absence warranted an in-depth inquiry by the trial court into Torres' consent to the limited joint representation. *See, e.g., Osborne v. Cummings*, No. 85–CV–692, 1988 WL 125703 at *2 (N.D.N.Y. Nov.22, 1988) (holding that dual representation of co-defendants is not "in and of itself impermissible" and therefore not sufficient on its own to impose an "affirmative duty under the sixth amendment ... to inquire into the propriety of the dual representation"); *Monroe v. New York*, 539 F.Supp. 1103, 1105 n. 9 (S.D.N.Y.1982) (noting that Federal rule does not impose automatic affirmative duty to make inquiry of jointly represented defendants). Otherwise, an in-depth inquiry would be required in all multi-defendant cases, and that is not the law.

Torres' trial counsel apparently did not believe there was any conflict of interest in having co-defendant's counsel represent Torres' interests briefly during Mr. Dunn's absence during the jury charge. Mr. Dunn implicitly represented to the court that there was no conflict of interest in asking co-defendant's counsel to stand in for him during the jury charge. (Tr. 3168–69.) Mr. Dunn was present during the pre-charge conference where the proposed charge was discussed. (*E.g.,* Tr. 2815–52.) The court's reading of the charge itself does not require immediate participation from counsel. Mr. Dunn returned before the conclusion of the charge and had the opportunity to confer with and join in co-defendant's counsel's objections to the charge. (Tr. 3258, 3295–300.) Given the limited time period of Torres' joint representation, the consent of his counsel and of his co-defendant's counsel to the joint representation, and Torres' own consent (Tr. 3168–69), the trial judge did not err in failing to make a more searching inquiry into Torres' consent to the joint representation.

### B. *Co–Defendant's Counsel's Lack of Conflict of Interest*

As the Second Circuit has clearly explained, there are two ways in which a petitioner can establish that he has suffered ineffective assistance of counsel due to a conflict of interest in violation of the Sixth Amendment: "if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected that attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994); *see also, e.g., Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993), *cert. denied*, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994); *Diaz v. LeFevre*, 94 Civ. 8395, 1997 WL 150987 at *3 (S.D.N.Y. March 28, 1997) (Cote, D.J.). In *Winkler*, the Second Circuit explained further:

> Under *Strickland v. Washington*, if a defendant establishes that her attorney had a potential conflict of interest, in order to prove that the conflict resulted in a violation of her Sixth Amendment right to effective assistance of counsel, she must

demonstrate prejudice. However, prejudice is presumed when a defendant establishes that her attorney had an actual conflict of interest that adversely affected the attorney's performance.

*Winkler v. Keane,* 7 F.3d at 307 (citations omitted). *See also, e.g., Lopez v. Scully,* 58 F.3d 38, 41 (2d Cir.1995); *United States v. Levy,* F.3d at 155; *Diaz v. LeFevre,* 1997 WL 150987 at *3.

The first prong (potential conflict): Torres may demonstrate the potential for a conflict of interest, but because he has not shown that he suffered any prejudice as a result, he should not be granted relief. His defense and that of his co-defendants was almost entirely compatible, but because of the divergent positions with respect to a witness and the potential conflicts that accompany any joint representation, it was conceivable (but not likely) that the interests of Torres and his co-defendant might diverge at some point during the jury charge so as to place the co-defendant's attorney under inconsistent duties. Torres admits, however, that "it cannot be stated that this conflict directly and in a focused way prejudiced the petitioner during the charge." (Petition at 18.) While Torres claims that there was "a significant *potential* for prejudice which was subtle but very real" (*id.,* emphasis added), this does not satisfy Torres' burden of demonstrating *actual* prejudice when a potential conflict of interest existed.

The second prong (actual conflict): Torres has not demonstrated any actual conflict of interest, because he has failed to demonstrate that his interests diverged with those of his co-defendants with respect to any portion of the jury charge. A habeas petitioner must show "that a conflict of interest actually affected the adequacy of his representation." *Cuyler v. Sullivan,* 446 U.S. at 349, 100 S.Ct. at 1719. Torres has not pointed to any point during the jury charge at which "some plausible alternative defense strategy or tactic might have been pursued" had his own counsel been present. *Winkler v. Keane,* 7 F.3d at 309; *see also, e.g., Lopez v. Scully,* 58 F.3d at 41; *United States v. Felzenberg,* 97 Civ. 2800, 93 Cr. 460, 1998 WL 152569 at *15–16 (S.D.N.Y. April 2, 1998); *Diaz v. LeFevre,*

1997 WL 150987 at *3. Torres has not suggested, either here or in his counsel's brief to the First Department, that had his own counsel been present for the entire charge, he would have raised any additional objections to the trial judge's charge.

In short, the trial court was not required to make any further inquiry concerning Torres' temporary representation during the jury charge by a co-defendant's counsel, in light of the consent on the record by Torres, his counsel and the co-defendant's counsel. While there was a theoretical potential conflict of interest (as there always is in joint representation), Torres has shown no prejudice from the limited joint representation. Nor has he shown that any actual conflict arose, *i.e.,* he has not shown that his own defense counsel would have raised any objections to the charge had he been present. The Court should deny this habeas ground.

### III. *TORRES' CLAIM OF PREJUDICIAL BEHAVIOR BY THE TRIAL JUDGE SHOULD BE DENIED BECAUSE IT WAS DISMISSED IN STATE COURT ON ADEQUATE AND INDEPENDENT STATE GROUNDS*

Torres contends that the trial judge's conduct with respect to his attorney so prejudiced the jury that he was deprived of a fair trial. (Petition at 19–21.) The First Department held that this issue "was not preserved for appellate review by appropriate objections or a motion for a mistrial ... and in any event is without merit." *People v. Torres,* 224 A.D.2d 269, 269–70, 637 N.Y.S.2d 724, 725 (1st Dep't 1996).

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a '"fundamental miscarriage of justice."'" *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted); *accord, e.g., Coleman v. Thompson,* 501 U.S. 722, 735, 111

S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996), *cert. denied,* ——— U.S. ———, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997); *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Williams v. Bennet,* 97 Civ. 1628, 1998 WL 236222 at *6 (S.D.N.Y. April 20, 1998) (Baer, D.J. & Peck, M.J.); *Vera v. Hanslmaier,* 928 F.Supp. 278, 285 (S.D.N.Y.1996) (Jones, D.J. & Peck, M.J.); *Liner v. Keane,* 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan.3, 1996) (Wood, D.J. & Peck, M.J.).

■■■ Here, the First Department held that Torres did not preserve his claim that he was denied a fair trial as a result of the trial judge's actions because he failed to make "appropriate objections or a motion for a mistrial." *People v. Torres,* 224 A.D.2d at 269, 637 N.Y.S.2d at 725. That is a decision based on state procedural default, an adequate and independent basis for decision that removes the issue from federal habeas review. The fact that the First Department also went on to dismiss the claim on the merits does not change this result. The Supreme Court has made clear that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding." *Harris v. Reed,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 (emphasis in original). The doctrine "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Id.* State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, *but we will not impose on state courts the responsibility for using particular language* in every case in which a state prisoner presents a federal claim—every state appeal, every denial of state collateral review—in order

that federal courts might not be bothered with reviewing state law and the record in the case.

*Coleman v. Thompson,* 501 U.S. at 739, 111 S.Ct. at 2559 (emphasis added). The First Department's ruling on the merits was an alternative ruling to its holding that Torres' judicial misconduct claim was "not preserved" for appellate review.[2] *See* cases cited at p. 18 above.

Because there is an adequate and independent state ground for the First Department's decision on the judicial misconduct issue, Torres would have to show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. at 2565. Torres has not tried to show cause and prejudice, and it is clear that he could not do so. Accordingly, Torres' judicial misconduct habeas ground should be denied.

## IV. *THE TRIAL COURT GAVE TORRES FULL AND FAIR OPPORTUNITY TO LITIGATE HIS FOURTH AMENDMENT CLAIM*

Torres' petition reiterates the claim raised before the First Department that no hearing was held to determine what material should have been redacted from the search warrant affidavit. (Petition at 22–23.) The Court construes this as a claim that Torres was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court; if it were not so construed, the claim would have to be dismissed outright:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context

---

**2.** The New York Court of Appeals denied Torres' application for leave to appeal without a written opinion. *People v. Torres,* 88 N.Y.2d 943, 647 N.Y.S.2d 177, 670 N.E.2d 461 (1996). The Supreme Court held in *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), with respect to unexplained orders, that

federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. at 2594. Torres has presented no facts to rebut that presumption.

the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

*Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976) (fns.omitted); *accord, e.g., Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991); *Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987); *Robinson v. Warden of James A. Thomas Center,* 984 F.Supp. 801, 804–05 (S.D.N.Y. 1997) (Sprizzo, D.J. & Peck, M.J.).

The Second Circuit, sitting en banc, has concluded that *Stone v.. Powell* permits federal habeas review of exclusionary rule contentions only in limited circumstances:

> If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available. It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted.

*Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (citations omitted), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *accord, e.g., Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992); *Aziz v. Warden of Clinton Correctional Facility,* 92 Civ. 0104, 1992 WL 249888 at *3 (S.D.N.Y. Sept.23, 1992), *aff'd.,* 993 F.2d 1533 (2d Cir.), *cert. denied,* 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *Allah v. LeFevre,* 623 F.Supp. 987, 990–92 (S.D.N.Y.1985).

The record clearly indicates that the trial court did hold a hearing to determine whether probable cause existed at the time the search warrant was issued and to provide defense counsel with whatever information about the informant that could safely be disclosed, with the entire affidavit reviewed by the court *in camera.* (*See generally Seychel* Hr'g Tr.) Torres had ample opportunity to participate in the *Seychel* hearing, which de-

termined that probable cause existed for the issuance of the search warrant while protecting the identity of the confidential informant who provided the information upon which the warrant was based. (*Seychel* Hr'g Tr. 312.)[3] Torres also raised his Fourth Amendment claim on appeal to the First Department. *See People v. Torres,* 224 A.D.2d 269, 270, 637 N.Y.S.2d 724, 725 (1st Dep't 1996).

Indeed, the linchpin of Torres' argument on direct appeal and on habeas is that a *Seychel* hearing should have been held but was not. (Tsunis Aff.Ex. C: Torres' 1st Dep't Br. at 53–54: "in the instant case, no hearing was held [citing *Seychel* ] ... This matter should be remanded for a *Seychel* hearing ..."; Petition at 22: "in the instant case no hearing was held to determine what if any material should have been redacted," citing *Seychel.*) That is simply factually wrong—a *Seychel* hearing *was* held. (*See generally Seychel* Hr'g Tr.) Therefore, based on the standard adopted by the Second Circuit, since the state made available to Torres corrective procedures to redress Fourth Amendment issues (*i.e.,* it held a *Seychel* hearing), federal habeas relief is not available to Torres for any alleged Fourth Amendment violation.

### A. *Casting His Search Warrant Affidavit Claim as a Brady Claim Does Not Change the Result*

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

■ Torres contends that the informant's search warrant affidavit was *Brady* material which should have been turned over by the prosecution. (Petition at 22–23.)[4] Because

---

**3.** Torres' counsel's failure to participate in the proceeding may have been grounds for an ineffective assistance of counsel claim (which Torres has not raised), but such a claim would not be sufficient to constitute an "unconscionable

breakdown." *See, e.g. Allah v. LeFevre,* 623 F.Supp. at 991–92.

**4.** Torres did not raise a *Brady* claim in his direct appeal, but argued in his coram nobis motion

*Brady* addresses due process concerns rather than the search-and-seizure clause of the Fourth Amendment, *Brady* claims are generally cognizable in habeas petitions. *See, e.g., Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Miller v. Angliker,* 848 F.2d 1312 (2d Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988). Torres' *Brady* claim here, however, is ultimately based on the Fourth Amendment because he hopes to use the affidavit only in an attack on probable cause for the search warrant.

In *O'Quinn v. Estelle,* 574 F.2d 1208 (5th Cir.1978) (Roney, C.J.), *cert. denied,* 440 U.S. 919, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979), the Fifth Circuit was faced with a similar *Brady* habeas claim for information contained in a search warrant affidavit. 574 F.2d at 1208–09. The Fifth Circuit denied the habeas petition under *Stone v. Powell* because the petitioner had been given a full and fair opportunity to litigate the claim in state court. *Id.* at 1210. Judge Roney explained:

> The district court in this case held *Stone v. Powell* inapplicable, reasoning that O'Quinn's claim is based on the prosecution's duty to disclose exculpatory information, which under *Brady* arises out of the due process guaranty of a fair trial, not the search-and-seizure clause of the fourth amendment. It is clear, however, that O'Quinn's constitutional claim is ultimately based on the fourth amendment. From a constitutional standpoint, the identities of the "known narcotics users" are useful to him only in an attack on the probable

cause predicate of the search warrant that ultimately yielded the damning narcotics.

. . . .

Plaintiff unsuccessfully pressed his claim in Texas state court on direct appeal in 1971. Having received an opportunity for full and fair litigation of his fourth amendment claim, O'Quinn is not entitled to federal habeas corpus relief.

*Id.* at 1209–10.

Here, as in *O'Quinn,* Torres' claim is that the search warrant affidavit is *Brady* material because if he had it, he could have shown it was false and hence that there was no probable cause to search his apartment. (*See, e.g.,* Tsunis Aff.Ex. G: Torres Coram Nobis Br. at 9–11.) This is at bottom a Fourth Amendment claim in *Brady* clothing, and the Court agrees with Judge Roney's decision in *O'Quinn* that it should not be cognizable in a habeas proceeding.

Moreover, even if cognizable, the premise of Torres' claim is that defense counsel did not get the redacted affidavit and no *Seychel* hearing was held. In fact, as discussed above, a *Seychel* hearing was held, and a redacted version of the affidavit was provided to defense counsel, with only two paragraphs redacted. (*See, e.g.,* Tsunis Aff.Ex. D: State 1st Dep't Br. at 72: "defendants received redacted copies of the search warrant affidavit which omitted only the two paragraphs which would have identified the informant(s) if disclosed," citing *Seychel* Hr'g Tr. 310, 314–15.)

The Court should deny Torres' Fourth Amendment/*Brady* claim.

that his appellate counsel was ineffective for failing to do so. (*Compare* Tsunis Aff.Ex. C: Torres 1st Dep't Br. at 53–54 *with* Tsunis Aff.Ex. G: Torres Coram Nobis Br. at 9–11.) This indirect review of Torres' *Brady* claim does not satisfy the exhaustion requirement of habeas petitions. *See, e.g., Ehinger v. Miller,* 928 F.Supp. 291, 293–95 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.). As of the April 24, 1996 effective date of the AEDPA, however, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). For a discussion of the appropriate standard for determining when to dismiss and when to decide the merits of a petition that contains unexhausted claims, *see, e.g., Benitez v. Senkowski,* 97 Civ. 7819, slip op. at

5–9 & nn. 4–5 (S.D.N.Y. March 3, 1998) (Peck, M.J.) (and cases cited therein). For cases deciding unexhausted claims on the merits after the AEDPA, *see, e.g., Bernard v. Stinson,* 97 Civ. 1873, 1998 WL 40201 at *2 n. 1 (S.D.N.Y. Jan.30, 1998); *Rivera v. Senkowski,* 97 Civ. 5296, 1997 WL 391122 at *3 & n. 3 (S.D.N.Y. July 11, 1997); *Chapman v. Vanzandt,* 96 Civ. 6940, 1997 WL 375668 at *2 (S.D.N.Y. July 8, 1997); *Ramos v. Costello,* 96 Civ. 3659, 1997 WL 231129 at *5 (S.D.N.Y. May 7, 1997); *Loving v. O'Keefe,* 960 F.Supp. 46, 48–49 (S.D.N.Y.1997); *Cowan v. Artuz,* 95 Civ. 9967, 1996 WL 631726 at *5 (S.D.N.Y. Oct.24, 1996). Therefore, this Court may address the merits of Torres' *Brady* claim, if the Court would then deny the claim on the merits.

## V. *TORRES RECEIVED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL*

### A. *The Strickland v. Washington Standard*

The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted).

Second, the defendant must show prejudice from counsel's performance. *Id.* at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, *a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Id.* at 695–96, 104 S.Ct. at 2069 (emphasis added); *see also, e.g., DeLuca v. Lord,* 77 F.3d 578, 584 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996).

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington,* 466 U.S. at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

The *Strickland* test applies to appellate as well as trial counsel. *See, e.g., Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Ehinger v. Miller,* 942 F.Supp. 925, 932–33 (S.D.N.Y.1996) (Muka-

sey, D.J. & Peck, M.J.); *Benn v. Stinson,* 917 F.Supp. 202, 205 (S.D.N.Y.1995) (Stein, D.J. & Peck, M.J.).

Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments." *E.g., Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *Mayo v. Henderson,* 13 F.3d at 533; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206. Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *E.g., Jones v. Barnes,* 463 U.S. at 754, 103 S.Ct. at 3314; *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Ehinger v. Miller,* 942 F.Supp. at 932–33; *Benn v. Stinson,* 917 F.Supp. at 206. Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d at 533; *see also, e.g., Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206.

### B. *Application of the Strickland Standard*

Under the applicable legal standards, it is clear that Torres' claim of ineffective assistance of appellate counsel does not satisfy either prong of the *Strickland* test. Torres claims that his appointed counsel failed to raise two potential grounds for reversal of his conviction in state court: (1) the state's refusal to provide the affidavit in support of the search warrant for Torres' apartment constituted a violation of the rule in *Brady v. Maryland* (Amended Petition at 25–26); and (2) the trial judge erred in denying Torres' severance motion. (Amended Petition at 26–27.)

As for Torres' first argument, his appellate counsel raised the affidavit issue as a Fourth Amendment/*Seychel* issue, rather than as a *Brady* issue. (*See* Tsunis Aff.Ex. C: Torres 1st Dep't Br. at 53–54.) The First Department denied the appeal on that issue, finding

that a *Seychel* hearing was held. Since the factual predicate for the affidavit issue was erroneous—in fact there was a *Seychel* hearing and defense counsel received a redacted copy of the affidavit—the appeal would not have succeeded even if re-packaged as a *Brady* issue.

As for Torres' second argument, New York Criminal Procedure Law § 200.40(1)(b) allows joinder where "all the offenses charged are based on a common scheme or plan." The decision to grant or deny a severance motion rests in the sound discretion of the trial judge, and the defendant's "burden to demonstrate abuse of that discretion is a substantial one." *People v. Mahboubian,* 74 N.Y.2d 174, 183, 544 N.Y.S.2d 769, 773, 543 N.E.2d 34 (1989); *see also, e.g., Ruzas v. Sullivan,* 85 Civ. 4801, 1988 WL 83377 at *10 (S.D.N.Y. Aug.2, 1988) ("It is well established that a trial court, whether state or federal, has significant discretion when making severance decisions.") (citing cases). Torres was charged along with ten other individuals (eight of whom eventually pled guilty) in a fifty-four count indictment for their roles in a conspiracy to distribute heroin and cocaine. (Tsunis Aff.Ex. A: Indictment No. 5753/90.) Thus, there can be no dispute that defendants were jointly charged based on a common scheme or plan. Accordingly, under New York law, "severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt." *People v. Mahboubian,* 74 N.Y.2d at 184, 544 N.Y.S.2d at 774, 543 N.E.2d 34.

When Torres had moved for a severance before trial, Justice Snyder had no reason to believe that "the core of each defense [was] in irreconcilable conflict with the other." *Id.,* 74 N.Y.2d at 184, 544 N.Y.S.2d at 774, 543 N.E.2d 34. Indeed, even based on an after-the-fact analysis, the trial record does not demonstrate any such irreconcilable conflict in trial strategy. Indeed, the only "conflict" Torres cites is that a co-defendant was charged with selling drugs and Torres was only charged with possession, and thus in a

joint trial the greater culpability of the seller—defendant would rub off on Torres. (Tsunis Aff.Ex. G: Torres Coram Nobis Br. at 13.) If that were sufficient ground for mandatory severance, no two defendants could ever be tried together if there were any difference in the severity of the charges each faced, or if one but not all might testify. *Cf. Ruzas v. Sullivan,* 85 Civ. 4801, 1988 WL 83377 at *4, *10 (S.D.N.Y. Aug.2, 1988) (habeas claim of failure to sever denied even where one defendant testified and another did not). Torres has not satisfied either *Strickland* prong—appellate counsel was not deficient in failing to raise the claim, nor has Torres shown prejudice since the claim would not have succeeded even if it had been raised.

Torres' appellate counsel filed an extensive brief with the First Division, raising five challenges to Torres' conviction: (1) Torres was allowed to stand unrepresented during a critical portion of the trial; (2) assuming Torres was represented during that portion of the trial, the trial court failed to warn him of co-defendant's counsel's potential conflict of interest; (3) the trial court's conduct prejudiced the jury and denied Torres a fair trial; (4) Torres' sentence was excessive; and (5) the State's failure to provide the search warrant affidavit violated Torres' Fourth Amendment rights. (Tsunis Aff.Ex. C: Torres 1st Dep't Br.) The claims Torres' appellate counsel raised were not "clearly and significantly weaker" than those suggested by Torres in his habeas petition. *Mayo v. Henderson,* 13 F.3d at 533. Appellate counsel's lack of success on appeal provides no reason to second-guess his judgment in raising these issues. *See, e.g., Benn v. Stinson,* 917 F.Supp. at 207; *Curzi v. United States,* 773 F.Supp. 535, 542 (E.D.N.Y.1991), *aff'd sub nom. Laaman v. United States,* 973 F.2d 107, 113–14 (2d Cir.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Torres does not claim that he urged his appellate counsel to not raise these issues and instead to raise trial counsel's ineffectiveness.[5] Based on the "highly deferential"

*Strickland* review standard, Torres' appellate counsel's conduct does not fall "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066.

Torres' habeas claim of ineffective assistance of appellate counsel therefore should be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny Torres' petition for a writ of habeas corpus.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Denise L. Cote, 500 Pearl Street, Room 1040, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Cote. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

---

5. *See Curzi v. United States,* 773 F.Supp. at 542 ("Moreover, although petitioners here do not contend that they urged counsel to argue the illegality of the search of the Cleveland residence on appeal, it is instructive to note that appellate counsel cannot be faulted for not pursuing even claims which his or her client presses him to pursue.").

*MEMORANDUM OPINION and ORDER*

COTE, District Judge.

On November 20, 1998, the Court issued an Opinion denying the petitioner's petition for a writ of habeas corpus. On December 4, 1998, the Court received a letter from the petitioner *pro se* asking that the Court modify his sentence. The Court construes the letter as a motion for reconsideration.

Local Rule 6.3 requires that a motion for reconsideration set forth "the matters or controlling decisions which counsel believes the court has overlooked." Plaintiff has pointed to no matter or decision that suggests that the Court's November 20 Opinion was in error. The motion for reconsideration is denied.

SO ORDERED: