**Stanley RHODES a/k/a Hamza Abdar Rashid, Plaintiff,**

v.

**Daniel SENKOWSKI, Defendant.**

**No. 98 Civ. 2221(NRB).**

United States District Court, S.D. New York.

Jan. 21, 2000.

Stanley Rhodes aka Hamza Abdar Rash-id, Great Meadow Correctional Facility, Comstock, New York, plaintiff pro se.

Alan Gadlin, Assistant District Attorney, New York County, New York City, for defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Petitioner's court-appointed counsel has filed objections to the comprehensive and well-cited Report and Recommendation of Magistrate Judge Andrew J. Peck, which recommended the dismissal of this habeas petition on the ground that it was untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA") as it was filed after April 24, 1997 and that petitioner had not established the extraordinary circumstances that would warrant a finding of equitable tolling.

Counsel notes that he has no objection to the Court's analysis of the law. However, he does object on two grounds. First, counsel maintains, based on a report of a social worker that was apparently not before Judge Peck, that petitioner lacked the intellectual capacity to meet the one-year filing period. Second, counsel objects on medical grounds to Judge Peck's report. Consistent with the mandate of 28 U.S.C. § 636(b)(1), we have considered the matters which are the subject of the objections *de novo*. For the reasons set forth below, we accept and adopt the Report and Recommendation of Judge Peck.

█ As for the suggestion that petitioner was not possessed of the intellectual capacity to comply with the one-year filing requirement, which has been raised for the first time in these objections, a review of the submissions by the petitioner belies counsel's suggestion. Moreover, the report of the social worker does not support the conclusion urged. The social worker concludes that petitioner's intellectual functioning is "borderline", that [h]e is not mentally retarded, and that there is "no sign of mental illness." As to the argument that Judge Peck's analysis of petitioner's mental condition was deficient, a review of the objections points to no sufficient basis for that contention. The burden is, after all, the petitioner's. Judge Peck's conclusion that it was not met is amply supported by the record.

For the foregoing reasons and on the basis of Judge Peck's Report and Recommendation, the petition is dismissed as untimely filed under the AEDPA.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Because petitioner Stanley Rhodes's state court conviction became final in 1990, long before passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), he was required by the Second Circuit's decision in *Ross v. Artuz*, 150 F.3d 97, 102–03 (2d Cir.1998), to bring his present federal habeas corpus petition by April 24, 1997. However, he did not bring the petition until February 1998. Rhodes claims that he is entitled to "equitable tolling" of the AEDPA's time limitation because of his medical condition, including the fact that he has AIDS. For the reasons set forth below, the Court holds that the AEDPA's one-year statute of limitations is subject to equitable tolling, but that petitioner Rhodes has not shown the extraordinary circumstances that would justify such tolling in his case. Accordingly, I recommend that the Court dismiss the petition as barred by the AEDPA's one-year statute of limitations.

### PROCEDURAL BACKGROUND

Petitioner Stanley Rhodes's petition is dated February 9, 1998 and was received by the Court's Pro Se Office on February 17, 1998. (*See* Pet. at p. 1; Rhodes Br. at 21.)[1]

On March 18, 1985, Rhodes was convicted of murder and sentenced to 25 years to life imprisonment. (Pet. ¶ 4; Ans. ¶¶ 2, 5.) *See also People v. Rhodes,* 154 A.D.2d 279, 279, 546 N.Y.S.2d 583, 583–84 (1st Dep't 1989), *appeal denied,* 75 N.Y.2d 816, 552 N.Y.S.2d 567, 551 N.E.2d 1245 (1990) (table). The First Department affirmed Rhodes's conviction on October 24, 1989. *People v. Rhodes,* 154 A.D.2d 279, 546 N.Y.S.2d 583 (1st Dep't 1989). (*See also* Answer ¶ 9.) On January 12, 1990, the New York Court of Appeals denied Rhodes's application for leave to appeal. *People v. Rhodes,* 75 N.Y.2d 816, 552 N.Y.S.2d 567, 551 N.E.2d 1245 (1990) (table). (*See also* Answer ¶ 10.) By application dated May 22, 1993, Rhodes sought a writ of error coram nobis in the First Department, which was denied on August 19, 1993. (Ans. ¶ 11 & Exs. J, L.)

Over eight years after the completion of his state court appeal, Rhodes filed his federal habeas petition (dated February 9, 1998 and received by the Court's Pro Se Office on February 17, 1998). (Pet. at p. 1; Rhodes Br. at 21.) Rhodes's petition raised four claims: first, improper supplemental jury charge (Pet. ¶ 7; Rhodes Br. at 12–13); second, the prosecution improperly withheld evidence in violation of *Brady v. Maryland* and *People v. Rosario* (Pet. ¶¶ 8, 10; Rhodes Br. at 16, 18–21); third, ineffective assistance of counsel (Pet. ¶¶ 8, 9; Rhodes Br. at 17–18); and fourth, insufficient *voir dire* of a nine-year-old witness to determine her capacity to testify (Pet. ¶ 9).

On March 27, 1998, Chief Judge Griesa ordered petitioner "to show cause by affirmation why the [AEDPA's] statute of limitations should not bar the instant petition." (Dkt. No. 2: 3/27/98 Order at 2.) Rhodes filed an affidavit, dated May 14, 1998, arguing that the limitations period should be "equitably tolled" because his "past and continuing illness," AIDS, "rendered him physically, and mentally incapacitated to prepare and file his petition within the time limitation." (Dkt. No. 3: Rhodes 5/14/98 Aff. at pp. 4–5.) In support of this claim, Rhodes explained that:

> On August 23, 1989, petitioner was informed that his test results were positive and that he in fact had contracted the HIV virus. . . .
>
> Following several months of AIDS related medication, petitioner developed several opportunistic diseases and was hospitalized on about August 1991, as a result [of] his allergy to the HIV medication. From August 1991 to 1996, petitioner suffered with many of the opportunistic diseases resulting [in] severe bouts of depression, weight loss and fungal infections, all of which have contributed to petitioner's mental deterioration. . . .
>
> Still extremely ill petitioner medical condition became life threatening and was again hospitalized on March 3, 1997. Thereafter, on May 28, 1997, petitioner's condition took a turn for the worse when his kidneys failed requiring extensive amounts of medication which rendered petitioner, both physically and mentally disabled. Following petitioner's recovery from kidney failure, petitioner sustained an extensive fungal infection which resulted in an extreme body rash that covered fifty per cent of petitioner's body. . . .
>
> Petitioner's health has gotten much worse as the time has progressed. In

---

1. The petition is actually dated January 26, 1998. (*See* Pet. at p. 4.) However, Rhodes's accompanying brief is dated February 9, 1998, and Rhodes incorporates the brief into his petition. (Pet. ¶ 15; Rhodes Br. at 21.) The Court therefore treats February 9, 1998 as the date of the petition. The Court's decision would not change, however, even if January 26, 1998 were the date of the petition.

particularly, the periods between April 24, 1996 through February 17, 1998, when petitioner eventually filed his petition, was the time petitioner experienced the worse health problems, and caused him to be hospitalized on two separate occasions. Surely, petitioner's failing health and constant illness should mandate an exception to the statute of limitations. Petitioner was (and is) simply medically, physically and mentally incapacitated to have litigated his criminal conviction within the statutory time limit.

(*Id.* at pp. 1–4.) Additionally, Rhodes argued that the limitations period violated the Suspension and Due Process Clauses and could only be applied "prospectively." (*Id.* at pp. 5–10.)

After the case was referred to me, I ordered Rhodes to submit a "*detailed* affirmation describing for how long he was hospitalized on each of the two occasions, how frequently he was seen by prison medical personnel, and how he spent his days in prison, during the period April 24, 1996 to February 9, 1998." (Dkt. No. 9: 12/10/98 Order at 1–2, emphasis in original.)

On January 8, 1999, Rhodes submitted an undated affirmation which detailed his medical history between April 26, 1996 and February 8, 1998 as follows:

2. On January 14, 1997, petitioner was transported to the Albany Medical Center emergency department urgent care center with complaints of near syncope and hypertensi. Thereafter, having undergone several medical examinations, on January 17, 1997, petitioner was admitted to the Albany Medical Center Hospital with the admission diagnosis as atypical chest discomfort. On January 20, 1997, petitioner was discharged. . . .

3. On February 23, 1997, petitioner was transported to Albany Medical Center Hospital and was hospitalized suffering from extreme headache, fever and body rash. . . .

4. On February 28, 1997, petitioner was discharged. . . .

5. As stated in petitioner's May 14, 1998 affirmation (at pp. 3), on May 28, 1997, petitioner's kidneys failed requiring extensive amounts of medication, which adversely effected petitioner by causing an extensive fungal infection resulting in an extreme body rash covering a major portion of his body.

6. Following these three hospitalizations, up until this present day, petitioner has been monitored and treated daily by prison medical personnel for any adverse changes in his numerous medical disorders, and/or any adverse reactions to the multiple medications which he digests daily. Petitioner's constant and continue[d] physical illnesses along with the numerous multiple medications has rendered the petitioner completely physically and mentally incapacitated. In fact, during the periods between April 24, 1996 to February 9, 1998, the Department of Correction[s] determined the petitioner to be medically unfit and physically incapacitated, and ordered petitioner to be housed at the institution's physically disable[d] invalid unit, where he has been housed throughout the periods of April 1996 until the present day.

(Dkt. No. 12: Rhodes 1/8/99 Aff. ¶¶ 2–6.)

On February 16, 1999, the State filed papers in opposition to the petition, arguing that "the one-year limitations period established in . . . section 2244(d)(1) bars the petition." (Dkt. No. 13: State 2/16/99 Br. at 2.)

### ANALYSIS

### I. THE AEDPA'S ONE–YEAR STATUTE OF LIMITATIONS BARS RHODES'S PETITION, UNLESS EQUITABLE TOLLING WERE APPLICABLE

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act. The AEDPA

instituted a one-year limitations period for habeas petitions:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

28 U.S.C. § 2244(d)(1) (as amended by the AEDPA).

In *Ross v. Artuz*, 150 F.3d 97 (2d Cir. 1998), the Second Circuit held that a petitioner whose conviction became final prior to the AEDPA's effective date "should [be] accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition," such that a petition filed by April 24, 1997 is timely. *Ross v. Artuz*, 150 F.3d at 102–03; *accord, e.g., Joseph v. McGinnis*, 150 F.3d 103, 104 (2d Cir.1998); *Rosa v. Senkowski*, 148 F.3d 134, 135–36 (2d Cir.1998); *Youngblood v. Greiner*, 97 Civ. 3289, 1998 WL 720681 at *4 (S.D.N.Y. Oct. 13, 1998) (Cote, D.J.).

 Here, since Rhodes's conviction became final well before the AEDPA's effective date,[2] he had until April 24, 1997 to file a timely petition. A pro se prisoner's papers are considered filed when they are handed over to prison officials for forwarding to the court. *See, e.g., Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988); *Dory v. Ryan*, 999 F.2d 679, 681–82 (2d Cir.1993); *Torres v. Irvin*, 33 F.Supp.2d 257, 270 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.); *Concepcion v. Portundo*, 97 Civ. 3183, 1998 WL 42568 at *2 n. 1 (S.D.N.Y. Feb. 4, 1998); *Brooks v. Artuz*, 97 Civ. 3300, 1998 WL 42567 at *1 n. 2 (S.D.N.Y. Feb.4, 1998); *Covington v. City of New York*, 916 F.Supp. 282, 286 (S.D.N.Y.1996) (Scheindlin, D.J. & Peck, M.J.). Absent evidence to the contrary, the Court assumes that Rhodes gave his petition to prison officials for mailing on the date he signed it, Feb-

ruary 9, 1998. *See, e.g., Torres v. Irvin*, 33 F.Supp.2d at 270; *Hunter v. Kuhlman*, 97 Civ. 4692, 1998 WL 182441 at *1 n. 2 (S.D.N.Y. April 17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz*, No. 97 CV 97–2394, 1997 WL 876735 at *1 (E.D.N.Y. Sept.13, 1997).

Accordingly, Rhodes's February 9, 1998 petition, filed 291 days after the April 24, 1997 *Ross v. Artuz* deadline is untimely, unless Rhodes is entitled to an equitable toll of the limitations period.

## II. *RHODES' PHYSICAL AND MENTAL AILMENTS RESULTING FROM AIDS ARE NOT SUFFICIENT TO ENTITLE HIM TO AN EQUITABLE TOLLING OF THE AEDPA'S ONE-YEAR LIMITATIONS PERIOD*

Rhodes argues that the AEDPA's one-year limitations period should be "equitably tolled" because complications from AIDS left him "completely physically and mentally incapacitated" between April 24, 1996 and February 9, 1998. (Rhodes 1/8/99 Aff. ¶ 6.)

### A. *The AEDPA's One-Year Statute of Limitations May Be Equitably Tolled*

 As a general proposition, a time limitations period that is analogous to a statute of limitations is subject to equitable tolling, whereas a time bar which stands as a jurisdictional prerequisite to filing a suit in federal court is not. *See, e.g., Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1991); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Carlyle Tow-*

---

**2.** A judgment of conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]." *Ross v. Artuz*, 150 F.3d at 98; *accord, e.g., Torres v. Irvin*, 33 F.Supp.2d 257, 271 (S.D.N.Y.1998) (Cote, D.J. & Peck,

M.J.); *Cowart v. Goord*, 97 Civ. 3865, 1998 WL 276213 at *2 (S.D.N.Y. May 29, 1998); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (S.D.N.Y.1997); *Jones v. Artuz*, No. CV 97–2394, 1997 WL 876735 at *1 (E.D.N.Y. Sept.13, 1997).

ers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp., 170 F.3d 301, 305–10 (2d Cir.1999); In re Benedict, 90 F.3d 50, 53–54 (2d Cir.1996); New York v. Sullivan, 906 F.2d 910, 917 (2d Cir.1990); Johnson v. AL Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir.1984); Raynor v. Dufrain, 28 F.Supp.2d 896, 900 (S.D.N.Y.1998). To determine whether a statutory time period is a jurisdictional requirement or a limitations period subject to equitable tolling, a court must look to "[t]he structure of [the statute], the congressional policy underlying it, and the reasoning of [precedent] cases." Zipes v. Trans World Airlines, Inc., 455 U.S. at 393, 102 S.Ct. at 1132; accord, e.g., Carlyle Towers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp., 170 F.3d 301, 306–07 (quoting Zipes ).

The Second Circuit has yet to determine whether the AEDPA's one-year limitations period may be equitably tolled.[3] The vast majority of courts that have addressed the issue have held that the AEDPA's one-year time period is only a limitations period, analogous to a statute of limitations, rather than a jurisdictional bar, and thus subject to equitable tolling. These courts have found that the language, legislative history and purpose of the AEDPA, along with the structure of the habeas corpus statute (namely, that the one-year limitations period does not appear in § 2241, the provision which confers habeas jurisdiction to the federal courts) and prior precedent of the Supreme Court, compel this conclusion. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir.1998) ("The Supreme Court has held that limitations periods with even more limiting language than the AEDPA provision could be equitably tolled ... [and] AEDPA's statutory language and construction clearly evinces a congressional intent to impose a one-year statute of limitations for the filing of federal habeas

claims by state prisoners.... As such, in rare and exceptional circumstances, it can be equitably tolled."), cert. denied, —— U.S. ——, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618–19 (3d Cir. 1998) (the structure of the habeas corpus statute and the "language[,] ... legislative history ... [and] statutory purpose of AEDPA" leads to the conclusion "that Congress intended the one-year period of limitation to function as a statute of limitations, and thus be subject to equitable tolling" in extraordinary cases); Miller v. Marr, 141 F.3d 976, 978 (10th Cir.1998) ("It must be remembered that § 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling," citing Calderon, below), cert. denied, —— U.S. ——, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998); Calderon v. United States Dist. Court, 128 F.3d 1283, 1288–89 (9th Cir.1997) ("[B]oth the Supreme Court and this court have repeatedly held that timing provisions even more unyieldingly phrased than AEDPA's are statutes of limitations subject to tolling."), vacated on other grounds, 163 F.3d 530 (9th Cir.1998); McDade v. Brigano, No. C–3–98–514, 1999 WL 126428 at *2 (S.D.Ohio March 8, 1999) ("The language and legislative history of the AEDPA establish that § 2244(d) was intended as a limitations period and not a jurisdictional bar ... [and thus] the AEDPA limitations period is subject to equitable tolling."); Raynor v. Dufrain, 28 F.Supp.2d at 900 ("because the [AEDPA] statute of limitations is not a jurisdictional bar, a court may choose to afford a petitioner equitable tolling ... [but] only in 'extraordinary circumstances' "); Fadayiro v. United States, 30 F.Supp.2d 772, 779, (D.N.J.1998) ("The limitations period in the AEDPA has been interpreted as a statute of limitations which is amenable to equitable tolling, rather than a jurisdic-

---

**3.** The Court notes that, although the Second Circuit has not yet addressed this issue, that court has referred to the one-year limitations period as a "statute of limitations." Ross v. Artuz, 150 F.3d 97, 98 (2d Cir.1998) ("Effec-

tive April 24, 1996, the [AEDPA] introduced for the first time a statute of limitations with respect to the filing of petitions for writs of habeas corpus....").

tional bar which precludes equitable modification."); *Stang v. Smith*, 23 F.Supp.2d 972, 973 (E.D.Wisc.1998); *Hernandez v. United States*, No. Civ.A. 94–60, 1998 WL 552942 at *6 (D.Del. Aug.13, 1998); *Henderson v. Johnson*, 1 F.Supp.2d 650, 653–54 (N.D.Tex.1998); *Parker v. Bowersox*, 975 F.Supp. 1251, 1252 (W.D.Mo. 1997).[4]

■ This Court agrees with the reasoning and the conclusions reached by virtually every court that has considered this issue, and holds that the AEDPA's one-year limitations period is subject to equitable tolling in appropriate circumstances.

■ However, "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Court*, 128 F.3d at 1288; *accord, e.g., Paige v. United States*, 171 F.3d 559, 561 (8th Cir.1999); *McDade v. Brigano*, 1999 WL 126428 at *2; *Chavez v. Mueller*, No. C. 98–3070, 1999 WL 115431 at *2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1273 (D.Haw.1999); *Raynor v. Dufrain*, 28 F.Supp.2d at 900; *United States v. Espinoza–Godinez*, 11 F.Supp.2d 1210, 1214 (D.Or.1998); *Henderson v. Johnson*, 1 F.Supp.2d at 653–54 (also adopting a

list of seven "nonexclusive factors to assist in deciding whether a prisoner has met the high tolling standard"); *United States v. Muldrow*, No.Crim.A. 98–20063, 1998 WL 351574 at *2 (D.Kan. June 16, 1998).[5] The burden is on the petitioner—here, Rhodes—to make such a showing, and federal courts are to "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Calderon v. United States Dist. Court*, 128 F.3d at 1289; *see, e.g., McDade v. Brigano*, 1999 WL 126428 at *2; *Eisermann v. Penarosa*, 33 F.Supp.2d at 1273; *see also, e.g., Braham v. State Ins. Fund*, 97 Civ. 7121, 1999 WL 14011 at *3 (S.D.N.Y. Jan.14, 1999) (Cote, D.J.) ("A [Title VII] plaintiff seeking to toll the statute of limitations on equitable grounds such as illness bears the burden to show that the limitations period should be extended.") (citing *Hedgepeth v. Runyon*, 96 Civ. 1161, 1997 WL 759438 at *4 (S.D.N.Y. Dec.10, 1997) (citing *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 333 (D.C.Cir.1992))).

### B. *Rhodes Is Not Entitled to Equitable Tolling*

■ In support of his equitable tolling claim, Rhodes alleges that the period between April 24, 1996 and February 9, 1998 was when he "experienced the wors[t]

---

4. *See also, e.g., Paige v. United States*, 171 F.3d 559, 561 (8th Cir.1999); *Triggs v. Cain*, No. Civ.A. 97–2430, 1999 WL 127249 at *1 (E.D.La. March 8, 1999); *Chavez v. Mueller*, No. C 98–3070, 1999 WL 115431 at *2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1273 (D.Haw.1999); *Sperling v. White*, 30 F.Supp.2d 1246, 1254 (C.D.Cal.1998); *United States v. Espinoza–Godinez*, 11 F.Supp.2d 1210, 1213 (D.Or.1998); *Thomas v. Straub*, 10 F.Supp.2d 834, 835–36 (E.D.Mich.1998); *United States v. Muldrow*, No.Crim.A. 98–20063, 1998 WL 351574 at *2 (D.Kan. June 16, 1998); *Baskin v. United States*, 998 F.Supp. 188, 189 (D.Conn.1998); *but see United States v. Eubanks*, 92 Cr. 392, 1997 WL 115647 at *1 (S.D.N.Y. March 14, 1997) (dicta: "The AEDPA provision appears to state a statute of limitations which cannot be waived or modified by the Court.").

5. *See also, e.g., Davis v. Johnson*, 158 F.3d at 811 ("in rare and exceptional circumstances, [AEDPA's one-year limitations period] can be equitably tolled"); *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d at 618 ("equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair' "; "[g]enerally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights' "); *Fadayiro v. United States*, 30 F.Supp.2d at 779 ("Equitable tolling of the limitations period ... is warranted in limited circumstances."); *Hernandez v. United States*, 1998 WL 552942 at *6; *Thomas v. Straub*, 10 F.Supp.2d at 835–36.

health problems" associated with his illness, AIDS. (Rhodes 5/14/98 Aff. at p. 3.) Rhodes claims that at various times during this period, he suffered from extreme headaches, fever, hypertension, depression, weight loss, fungal infections and atypical chest discomfort, "all of which have contributed to petitioner's mental deterioration." (Rhodes 5/14/98 Aff. at p. 3; Rhodes 1/8/99 Aff. ¶¶ 2, 3, 5.) The most serious ailment Rhodes alleges is kidney failure, on May 28, 1997, with the medication prescribed for it causing an "extensive fungal infection resulting in an extreme body rash covering a major portion of his body." (Rhodes 1/8/99 Aff. ¶ 5.) Rhodes also alleges that he was hospitalized on three occasions during this period: first, January 14 to January 20, 1997; second, February 23, 1997 to February 28, 1997; and third, commencing on March 3, 1997 with Rhodes failing to provide the date on which he was discharged. (Rhodes 1/8/99 Aff. ¶¶ 2–4; Rhodes 5/14/98 Aff. at p. 3.) Rhodes adds that since his hospitalizations and up "until this present day," he has been "monitored and treated daily [by] prison medical personnel for any adverse changes in his numerous medical disorders, and/or any adverse reactions to the multiple medications which he [in]gests daily." (Rhodes 1/8/99 Aff. ¶ 6.) Rhodes adds that "the Department of Correction determined the petitioner to be medically unfit and physically incapacitated, and ordered petitioner to be housed at the institution's physically disabled invalid unit, where he has been housed throughout the periods of April 1996 until the present day." (*Id.*)

It appears, based on the Court's research, that very few courts have addressed the issue of whether a petitioner's physical and/or mental illness can toll the AEDPA's one-year limitations period. *See Calderon v. United States Dist. Court for the Central Dist.*, 163 F.3d 530, 541 (9th Cir.1998) ("petitioner's mental incompetency—a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control—renders the petitioner unable to assist his attorney in the preparation of a habeas petition," and therefore served to equitably toll the AEDPA's statute of limitations until after the district court made a competency determination where there had been a "threshold showing of mental incompetency"); *Murphy v. Johnson*, No. 97–CV–2889, 1998 U.S.Dist. LEXIS 5878 at *8 (N.D.Tex. Feb. 23, 1998) ("The Court finds that petitioner's [unsupported] claim of bi-polar and manic/depressive behavior does not rise to the level of 'extraordinary circumstances' justifying equitable tolling" of AEDPA limitations period), *report and recommendation adopted,* 1998 U.S.Dist. LEXIS 5438 (N.D.Tex. April 9, 1998).

In other contexts, courts have found that "[i]llness may be an exceptional circumstance [that can toll a statute of limitations] when it has prevented the party from pursuing her legal rights." *Braham v. State Ins. Fund,* 97 Civ. 7121, 1999 WL 14011 at *3 (S.D.N.Y. Jan.14, 1999) (Cote, D.J.) (Title VII and ADEA statute of limitations); *see, e.g., Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir.1991) (equitable tolling of Social Security Act statute of limitations to seek judicial review "may be warranted ... where ... a claimant avers incapacity due to mental impairment during the [limitations] period)"; *Chalom v. Perkins,* 97 Civ. 9505, 1998 WL 851610 at *6 (S.D.N.Y. Dec. 9, 1998) (recognizing equitable tolling principle in Title VII case but rejecting plaintiff's claim where plaintiff "offer[ed] no evidence of her suggested mental anguish and stress and the extent to which it affected her ability to file within the statutory deadlines"); *Lloret v. Lockwood Greene Eng'rs Inc.,* 97 Civ. 5750, 1998 WL 142326 at *2 (S.D.N.Y. Mar.27, 1998) (Sotomayor, D.J.) (ADA and ADEA, quoting *Hedgepeth,* below); *Mahoney v. Beacon City School Dist.,* 988 F.Supp. 395, 399 (S.D.N.Y.1997) (Title VII quoting *Decrosta,* below); *Hedgepeth v. Runyon,* 96 Civ. 1161, 1997 WL 759438 at *4–5 (S.D.N.Y. Dec.10, 1997) (to receive tolling of Title VII statute of limitations

based on illness, plaintiff " 'bears the burden' " to show that " 'disability [was] of such a nature that plaintiff [was] unable to manage his business affairs and [was] incapable of comprehending and protecting his legal rights and liabilities,' " relying on New York law); *Pauling v. Secretary of Dept. of Interior*, 960 F.Supp. 793, 804 n. 6 (S.D.N.Y.1997) (Cote, D.J.) (tolling Title VII limitations period inappropriate where plaintiff, who claimed a " 'major depressive episode,' " failed to show that "he was too ill to comprehend his rights and to file a complaint"), *vacated on other grounds*, 160 F.3d 133 (2d Cir.1998); *Wenzel v. Nassau County Police Dep't*, No. CV–93–4888, 1995 WL 836056 at *3 (E.D.N.Y. Aug.5, 1995) (§ 1983: "apathy, depression, post-traumatic neurosis, psychological trauma and depression therefrom, or mental illness alone have been held to be insufficient to invoke the tolling provisions of" New York law; "[r]ather, the mental disability must be 'severe and incapacitating.' "); *Sanders v. Kiley*, 91 Civ. 6320, 1995 WL 77916 at *4, *6 (S.D.N.Y. Feb.23, 1995) ("plaintiff has submitted no evidence to support the view that the conditions that afflicted plaintiff—depression and headaches—encompass the degree of mental incapacity required by New York law to toll a statute of limitations period"; "courts need not credit wholly conclusory assertions" such as plaintiff's assertion

that he was " 'insane' "); *Berry v. United States*, 93 Civ. 8652, 1995 WL 33284 at *2 (S.D.N.Y. Jan.27, 1995) (tolling Title VII statute of limitations not justified where plaintiff "was not 'unable to protect [her] legal rights because of an over-all inability to function in society' "); *DeCrosta v. Runyon*, No. 90–CV–585 & 1269, 1993 WL 117583 at *3 (N.D.N.Y. April 14, 1993) (discussing standard for equitably tolling Title VII statute of limitations based on mental illness, relying on New York state law. "The disability must be of such a nature that plaintiff is unable to manage his business affairs and is incapable of comprehending and protecting his legal rights and liabilities.").[6]

Using these cases as a guide, this Court believes that Rhodes's allegations of physical and mental illness fail to meet the high standard necessary to justify an equitable tolling of the AEDPA's one-year limitations period. Rhodes argues that the physical and mental complications he experienced during the one-year time period, such as extreme headaches, depression, hypertension, weight loss, a fungal infection and "atypical chest disorder," justify an equitable tolling of the one-year period. However, the mere fact that Rhodes suffered with physical and mental ailments during the one-year period is insufficient to toll the one-year time period; Rhodes

6. *See also, e.g., Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) ("The few courts which have recognized an exception [to Title VII statute of limitations] for mental incapacity have limited the application of this equitable doctrine to exceptional circumstances" such as being "adjudged incompetent or institutionalized."); *O'Connor v. North Am. Phillips Lighting Corp.*, No. 88 C 7426, 1989 WL 118224 at *4 (N.D.Ill. Sept.26, 1989) ("A rare circumstance which can indeed toll the statutory limitation period is where the employee is found to have been mentally incapacitated during the filing period, thereby preventing him from pursuing his Title VII rights within the 300 days allotted." But "plaintiff's evidence of depression and mental incapacity is … vague and undocumented [and][a]s such, it is legally insufficient to toll the statutory filing period even accepting the allegations as true."); *Speiser v.*

*U.S. Dep't of Health & Human Servs.*, 670 F.Supp. 380, 384 (D.D.C.1986) (to toll Title VII statute of limitations, plaintiff must show that the " 'disability is of such a nature as to show [plaintiff] is unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities' "), *aff'd mem.*, 818 F.2d 95 (D.C.Cir.1987); *Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232, 237 (E.D.N.C. 1987) (Title VII statute of limitations should only be tolled when the plaintiff was so incapacitated that he or she was "incapable of filing any claim within the requisite time periods"); *Bassett v. Sterling Drug, Inc.*, 578 F.Supp. 1244, 1248 (S.D.Ohio 1984) (ADEA statute of limitations may be equitably tolled during time periods where plaintiff "was adjudicated mentally incompetent or institutionalized under a diagnosis of mental incompetence"), *appeal dismissed*, 770 F.2d 165 (6th Cir.1985).

must show that these medical problems rendered him unable to pursue his legal rights during the relevant time period. *See* cases cited above. The Court finds that Rhodes has failed to meet his burden on this issue because Rhodes has not presented sufficient evidence to show that he could not pursue his legal rights throughout the entire one-year period on the basis of his physical and mental problems.

Apart from the mere existence of his physical and mental ailments, Rhodes essentially presents three types of evidence and arguments to show that he was unable to pursue his legal rights during the one-year period.

First, Rhodes' points to his three hospitalizations—in January 1997 for seven days, February 1997 for six days and March 1997 for an unspecified number of days—as proof of his incapacitation. However, even if Rhodes was incapacitated during these three hospitalizations, Rhodes still had many months throughout the one-year time period, including the eight months before his first hospitalization (*i.e.*, from April 1996 until his January 1997 hospitalization), in which to prepare his petition, and Rhodes has not presented any evidence to show that he was unable to pursue his legal rights during the periods within the one-year limitations period that he was not hospitalized. *See, e.g., Giraldes v. Ramirez–Palmer*, No. C 98–2757, 1998 WL 775085 at *2 (N.D.Cal. Nov.3, 1998) (impediment occurred "over eleven months into his one year period (and over eighteen months after his conviction became final), which gave [petitioner] many months before any problem developed at the prison to work on his petition," and thus no equitable tolling of AEDPA period); *Raynor v. Dufrain*, 28 F.Supp.2d at 900 n. 7 ("Even if there was some impediment to filing during the [AEDPA's] statutory period, if the petitioner still has many months remaining in which to file after removal of this impediment, this Court would have little reason to exercise its equitable powers."); *United States v. Van*

*Poyck,* 980 F.Supp. 1108, 1111 (C.D.Cal. 1997) (even if prison "lockdowns" limited petitioner's access to the law library for "two weeks out of the last four months," petitioner still had "fifty other weeks" in which to pursue a habeas remedy); *Speiser v. U.S. Department of Health & Human Servs.,* 670 F.Supp. 380, 384 (D.D.C.1986) ("Even assuming plaintiff was incompetent during her hospitalizations, she has not established that during the 99 days she was not hospitalized that she was impaired to the point of being noncompos mentis."), *aff'd mem.,* 818 F.2d 95 (D.C.Cir.1987); *see also, e.g., Harrison v. Galaza,* No. C 98–3371, 1999 WL 58594 at *3 (N.D.Cal. Feb.4, 1999) ("even if petitioner did not discover the existence of the AEDPA until March 10, 1997, at that time he still was within the statute of limitations and had sufficient time to file a state habeas petition containing his unexhausted claim and toll the time limit"); *Brooks v. Olivarez,* No. C 98–134, 1998 WL 474160 at *2 (N.D.Cal. Aug.5, 1998) ("Congress gave prisoners one year to get to federal court after their convictions became final.... That one year gives the prisoner plenty of time to get to federal court and leaves room for the inevitable delays in mail, unpredictable lockdowns, as well as interruptions in research and writing time common in prison.").

Another reason that equitable tolling is inappropriate here is that Rhodes waited almost eight years after his conviction became final to file his current habeas petition, but his supporting brief merely copies portions of his brief on direct state appeal. (*Compare* Ans. Ex. A: Rhodes 1st Dep't Brief at 3–14, 25–26, 28–30, 31–35, 42–45, 48–51 *with* Rhodes Br. at 1–11, 11–12, 15–16, 13–15, 16–18, 18–19.) *See, e.g., Miller v. Marr,* 141 F.3d at 978 (equitable tolling of AEDPA limitation denied where petitioner had nearly four years to file petition and his claims were "similar to those raised in his direct appeal and motion for state postconviction relief, thereby undercutting his argument that lack of access

caused his delay"); *Atkins v. Harris*, No. C 98–3188, 1999 WL 13719 at *2 (N.D.Cal. Jan.7, 1999) (equitable tolling inappropriate, despite claims of "lockdowns, restricted library access[,] transfers ... [and] claims of poor eyesight," "where petitioner had 16 years since his conviction was final to file a timely federal petition ... and [he] managed to file numerous state and federal petitions which contain claims that are the same as, or similar to, the ones raised in the present petition"); *Nguyen v. Mervau*, No. C 98–2038, 1998 WL 556628 at *2 (N.D.Cal. Aug.24, 1998) (equitable tolling not justified based on "lack of fluency in the English language and his alleged inability to find a jailhouse lawyer" where petitioner filed petition over six years after conviction became final and raised same claims as on direct appeal); *United States ex rel. Lacey v. Gilmore*, No. 97 C 3528, 1998 WL 397842 at *3 (N.D.Ill. July 13, 1998) ("The fact that the claims Lacey raises on habeas are virtually identical to the claims he raised during State direct and post-conviction review undercut his claim" that he is entitled to tolling of limitations period); *see also McDade v. Brigano*, 1999 WL 126428 at *3 ("a petitioner must show he was diligent in pursuing his remedies not only during the equitably tolled period, but also during any period prior to that when he was eligible to file his petition").

Furthermore, even assuming arguendo that the AEDPA statute of limitations should be tolled during the time Rhodes was hospitalized, *see, e.g., Speiser v. U.S. Dep't of Health & Human Servs.*, 670 F.Supp. at 384 (assuming, without deciding, that Rehabilitation Act time period tolled during hospitalizations), Rhodes's petition still would be untimely. It is difficult to discern the total amount of time that Rhodes was hospitalized between April 24, 1996 and February 9, 1998. It is clear from his affidavits that Rhodes was in the hospital from January 14 to January 20, 1997, and then from February 23 to February 28, 1997, a total of 13 days. (Rhodes 1/8/99 Aff. ¶¶ 2–4.) However, the length of his third hospitalization is not clear. Rhodes's third hospitalization began on March 3, 1997, but he does not state when it ended. In one of his affidavits, immediately following his claim that he went into the hospital on March 3, Rhodes asserts that his condition "took a turn for the worse" on May 28, 1997 when his kidneys failed. If the Court were to assume, therefore, that Rhodes' third hospital stay lasted from March 3, 1997 through May 28, 1997 and extended for even another two months of recovery time until July 28, 1997, this third hospitalization would have lasted for 147 days. Thus, these three hospitalizations add up to an estimated total of 160 days. Rhodes's petition, however, was filed 291 days after the April 24, 1997 deadline. Thus, even if the time Rhodes was in the hospital were excluded, his habeas petition still would be untimely.

Rhodes' second argument concerning his incapacitation is his assertion that he was placed in the "physically disable[d] unit" and monitored daily by prison medical officials up until the present day. (Rhodes 1/8/99 Aff. ¶ 6.) This argument, however, does not show that Rhodes was unable to protect his legal rights, since Rhodes makes no showing that, while in this ward his physical and mental health were so impaired or the conditions in the ward so restrictive that they prevented him from preparing his habeas petition. *See, e.g., Giraldes v. Ramirez–Palmer*, 1998 WL 775085 at *2 (tolling inappropriate based on "lockdown" status of prison where "there [was] no showing that the lockdown actually impeded [petitioner's] efforts" to complete petition); *Hedgepeth v. Runyon*, 1997 WL 759438 at *4 (tolling rejected where no showing that plaintiff was "not able to protect her rights" despite illnesses); *Pauling v. Secretary of Dept. of Interior*, 960 F.Supp. at 804 n. 6 (tolling not warranted based on "major depressive episode" where medical evidence submitted indicated only that plaintiff "was too ill to work, not that he was too ill to compre-

hend his rights and to file a complaint"); *Berry v. United States*, 1995 WL 33284 at *2 (equitable tolling not justified by plaintiff's mental illness where evidence showed "she was distraught and fearful before she brought suit," but "not 'unable to protect [her] legal rights because of an over-all inability to function in society.' "). The fact that Rhodes filed this petition on February 9, 1998 while housed in this ward, without showing any change in his or the ward's conditions, undermines his argument, and is strong evidence that Rhodes had the ability to pursue his legal rights during the one-year limitations period. *See, e.g., Braham v. State Ins. Fund*, 1999 WL 14011 at *4 (filing of other lawsuit during alleged incompetency period demonstrated plaintiff was capable of pursuing her legal rights); *Chalom v. Perkins*, 1998 WL 851610 at *6 (rejecting equitable tolling argument based on illness where plaintiff filed an administrative complaint); *Lloret v. Lockwood Greene Eng'rs*, 1998 WL 142326 at *4 (same, where plaintiff filed bankruptcy claim); *Hedgepeth v. Runyon*, 1997 WL 759438 at *5 (same, where plaintiff sought disability retirement benefits); *Pauling v. Secretary of Dept. of Interior*, 960 F.Supp. at 804 n. 6 (same, where plaintiff filed workers' compensation claim); *Sanders v. Kiley*, 1995 WL 77916 at *5 (same, where plaintiff filed and won a pro se lawsuit).

Rhodes's third tolling argument consists of his conclusory assertions, such as his "constant and continue physical ill-

nesses along with the numerous multiple medications ... rendered the petitioner completely physically and mentally incapacitated" (Rhodes 1/8/99 Aff. ¶ 6) and "[p]etitioner submits that his past and continuing illness ... rendered him physically, and mentally incapacitated to prepare and file his petition...." (Rhodes 5/14/98 Aff. at pp. 4–5.) Such conclusory contentions are simply insufficient to meet his burden. *See, e.g., Sanders v. Kiley*, 1995 WL 77916 at *6 (plaintiff's "wholly conclusory assertion" that he was " 'insane' " did not justify tolling of statute of limitations); *O'Connor v. North Am. Phillips Lighting Corp.*, 1989 WL 118224 at *5 ("The plaintiff's evidence of depression and mental incapacity is thus vague and undocumented. As such, it is legally insufficient to toll the statutory filing period...."); *Dumas v. Agency for Child Dev.*, 569 F.Supp. 831, 834 n. 4 (S.D.N.Y. 1983) ("Of course, we need not assume the correctness of conclusory assertions such as Dumas' statement that '[t]his affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge.' ").

Accordingly, Rhodes' has failed to show that his physical and mental problems rendered him unable to pursue his legal rights and thus has not shown any "extraordinary circumstances" to justify an equitable tolling of the AEDPA limitations period.[7] *See* cases cited above.

---

**7.** Petitioner also asserts in his May 14, 1998 affidavit that he is not a "skilled attorney" and does not have "unbridled access" to the law library. (Rhodes 5/14/98 Aff. at p. 10.) Allegations such as these, however, are insufficient to justify an equitable tolling of the limitations period. *See, e.g., Miller v. Marr*, 141 F.3d at 978 (limited library access insufficient to establish "extraordinary circumstances"); *Harrison v. Galaza*, 1999 WL 58594 at *3 ("a lack of knowledge of the law is not sufficient to constitute extraordinary circumstances"); *Eisermann v. Penarosa*, 33 F.Supp.2d at 1273 ("Petitioner's alleged lack of legal expertise does not excuse his delay."); *Atkins v. Harris*, 1999 WL 13719 at *2 ("lockdowns, restricted library access and transfers

do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations. Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition.'... Petitioner's alleged lack of legal sophistication also does not excuse the delay."); *Fadayiro v. United States*, 30 F.Supp.2d at 781 ("Ignorance of the law does not justify equitable tolling of a statute of limitations."); *Henderson v. Johnson*, 1 F.Supp.2d at 656 (claims that petitioner "did not have professional legal assistance [and] 'did not know what to do' ... are far from the extraordinary circumstances required to toll the statute");

In sum, the Court agrees with Rhodes that physical or mental illness could toll the AEDPA's one-year time period to file a habeas corpus petition; however, a petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period. The Court is sympathetic to Rhodes's medical conditions. However, the Court gave Rhodes two opportunities to provide a "detailed affirmation" as to why he could not file his petition on time. Rhodes's vague responses are simply insufficient to support equitable tolling. "While [petitioner] clearly suffers from a legitimate ... illness, [he] has failed to demonstrate that it disabled [him] to the requisite degree." *Speiser v. U.S. Dep't of Health & Human Servs.*, 670 F.Supp. at 385. Rhodes's habeas petition is untimely and not subject to equitable tolling.

### III. *RHODES'S REMAINING ARGUMENTS AS TO WHY THIS COURT SHOULD NOT APPLY THE ONE-YEAR LIMITATIONS PERIOD TO HIS PETITION ARE MERITLESS*

#### A. *Due Process and Retroactivity Argument*

Rhodes argues that (a) the one-year limitations period should not be applied to his petition because the limitations period "may be only applied prospectively," relying on *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and (b) applying the one-year time limitations period to his petition violates the Due Process Clause.

Rhodes's first argument is meritless because the Court here is applying the AEDPA prospectively, since Rhodes's petition

was filed after the AEDPA's effective date. *See, e.g., Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) (the AEDPA's amendments, including the new limitations periods for the filing of § 2254 petitions, "generally apply ... to cases filed after the Act became effective"). However, if the AEDPA was applied in such a way as to bar Rhodes' petition because his year to file his petition had elapsed prior to the enactment of the statute, the limitations period established by the AEDPA would result in serious retroactivity concerns and a due process violation. *See Ross v. Artuz*, 150 F.3d 97, 100 (2d Cir.1998) (due process requires that petitioner be allowed "reasonable time" to file action if newly enacted statute of limitations would otherwise extinguish claim). To alleviate these concerns, the Second Circuit held that a petitioner whose conviction became final prior to the AEDPA's effective date has one-year, the full amount of the limitations period, from the April 24, 1996 effective date of the statute within which to file his petition. *See Ross v. Artuz*, 150 F.3d at 103. The Second Circuit held:

> We conclude that, in light of the importance of the subject matter of habeas petitions and § 2255 motions, the grace period should be clear; and in light of Congress's selection of one year as the limitations period, we conclude that prisoners should have been accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition or a first § 2255 motion....
>
> Our adoption of a grace period of one year means that petitions filed pursuant to § 2254 and motions filed pursuant to § 2255 are not barred by the statute of

*Brown v. Superintendent, Elmira Correctional Facility*, 97 Civ. 3303, 1998 WL 75686 at *4 (S.D.N.Y. Feb.23, 1998) ("a self-serving statement that the litigant is ignorant of the law is not grounds for equitable tolling of a statute of limitations"); *United States v. Van Poyck*, 980 F.Supp. at 1111 (petitioner's assertion

that "he has been unable to access the prison's purportedly small law library for an unspecified number of days" insufficient to equitably toll limitations period); *see also, e.g., Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993) ("[i]gnorance ... will not constitute 'cause'" for a procedural default).

limitations established by AEDPA if filed on or before April 24, 1997.

*Ross v. Artuz,* 150 F.3d at 103. Therefore, because Rhodes was afforded the full one-year to file his habeas petition after the AEDPA's effective date, applying the limitations period to his petition does not present retroactivity concerns or violate his due process rights.

### B. *Suspension Clause*

██ Rhodes relies on Judge Sweet's opinion in *Rosa v. Senkowski,* 97 Civ. 2468, 1997 WL 436484 (S.D.N.Y. Aug.1, 1997), *aff'd on other grounds,* 148 F.3d 134 (2d Cir.1998), for the proposition that application of the AEDPA's one-year statute of limitations would violate the Suspension Clause and thus be unconstitutional. (Rhodes 5/29/98 Aff. at pp. 3–4.) In a series of scholarly opinions, then District (now Circuit) Judge Sotomayor disagreed with Judge Sweet's *Rosa* decision and found that applying the one-year time limitations period to convictions that became final prior to the effective date of the AEDPA did not violate the Suspension Clause. *Rodriguez v. Artuz,* 990 F.Supp. 275, 277–84 (S.D.N.Y.), *aff'd,* 161 F.3d 763 (2d Cir.1998); *accord, Alexander v. Keane,* 991 F.Supp. 329, 334–40 (S.D.N.Y.1998); *Albert v. Strack,* 97 Civ. 2978, 1998 WL 9382 at *4 n. 3 (S.D.N.Y. Jan.13, 1998); *Rashid v. Khulmann,* 991 F.Supp. 254, 260 n. 3 (S.D.N.Y.1998); *Santana v. Artuz,* 97 Civ. 3387, 1998 WL 9378 at *1 n. 2 (S.D.N.Y. Jan.13, 1998). Notably, the Second Circuit recently affirmed Judge Soto-

mayor's opinion in *Rodriguez v. Artuz* "for substantially the reasons stated by the district court." *Rodriguez v. Artuz,* 161 F.3d 763, 764 (2d Cir.1998). Additionally, this Court has previously stated its agreement with Judge Sotomayor's series of opinions, *Cromwell v. Keane,* 33 F.Supp.2d 282, 286 (S.D.N.Y.1999) (Rakoff, D.J. & Peck, M.J.), and several other Judges in this district also have agreed with Judge Sotomayor. *See, e.g., Velasquez v. United States,* 4 F.Supp.2d 331, 334–35 (S.D.N.Y. 1998) (Leisure, D.J.); *O'Connor v. Kuhlman,* 97 Civ. 2914, 1998 WL 229516 at *1–2 (S.D.N.Y. May 7, 1998) (McKenna, D.J.); *Lovett v. Kuhlmann,* 97 Civ. 2995, 1998 WL 209618 at *3–4 (S.D.N.Y. April 29, 1998) (Mukasey, D.J.); *Williams v. Greiner,* 97 Civ. 3886, 1998 WL 205317 at *1 n. 1 (S.D.N.Y. April 27, 1998) (Chin, D.J.); *Rodriguez v. Bennett,* 97 Civ. 5953, 1998 WL 104604 at *1 (S.D.N.Y. March 9, 1998) (Rakoff, D.J.); *Brooks v. Artuz,* 97 Civ. 3300, 1998 WL 42567 at *3–4 (S.D.N.Y. Feb.4, 1998) (Koeltl, D.J.); *Garcia v. New York State Dep't of Correctional Servs.,* 97 Civ. 3867, 1997 WL 681313 at *2 n. 3 (S.D.N.Y. Oct.31, 1997) (Scheindlin, D.J.).[8] Judge Sweet's *Rosa* decision has not been followed by any other Judges in the Circuit, so far as the Court can determine.

Thus, the AEDPA's one-year limitations period is not unconstitutional.

### *CONCLUSION*

For the reasons set forth above, I recommend that the Court dismiss Rhodes's

---

**8.** *Bond v. Walker,* 97 Civ. 3026, 1998 WL 229505 at *1–2 (S.D.N.Y. May 7, 1998) (McKenna, D.J.); *Matthews v. Artuz,* 97 Civ. 3334, 1998 WL 205310 at *2 n. 1 (S.D.N.Y. April 27, 1998) (Chin, D.J.); *Mangialino v. United States,* 97 Civ. 2720, 1998 WL 182443 at *2–3 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Terrence v. Senkowski,* 97 Civ. 3242, 1998 WL 182436 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Santana v. Kuhlman,* 97 Civ. 3882, 1998 WL 182433 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Robertson v. Artuz,* 97 Civ. 2561, 1998 WL 182428 at *2–3 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Brown v. Superintendent, Elmira Correctional Facility,* 97 Civ. 3303, 1998 WL 75686 at *3–4 (S.D.N.Y. Feb.23, 1998) (Mukasey, D.J.); *Avincola v. Stinson,* 97 Civ. 1132, 1997 WL 681311 at *2 n. 2 (S.D.N.Y. Oct.31, 1997) (Scheindlin, D.J.); *White v. Garvin,* 97 Civ. 3244, 1997 WL 626396 at *2 n. 4 (S.D.N.Y. Oct.8, 1997) (Scheindlin, D.J.); *Byas v. Keane,* 97 Civ. 2789, 1997 WL 605106 at *2 n. 2 (S.D.N.Y. Oct.1, 1997) (Scheindlin, D.J.); *La-Torres v. Walker,* 97 Civ. 3392, 1997 WL 605105 at *2 n. 3 (S.D.N.Y. Oct.1, 1997) (Scheindlin, D.J.).

habeas corpus petition as untimely pursuant to the AEDPA's one-year statute of limitations.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Denise L. Cote, 500 Pearl Street, Room 1040, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Cote. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL— CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).